AYRES, Judge.
Plaintiff instituted this action against the defendant to recover the sum of $1,613.98, with 5 percent per annum interest thereon from December 1, 1953, until paid, together with 10 percent additional on both principal and interest as attorney’s fees, and for recognition of its lien and privilege covering an oil, gas and mineral lease of the defendant on the NW54 of NE14, Section 26, Township 9 North, Range 1 East, together with the oil well located thereon, as well as upon all equipment and supplies located on said leased premises, under a contract and agreement for work done and materials furnished on said oil well owned by defendant and located in LaSalle Parish, Louisiana.
From a judgment dated June 7, 1954, in plaintiff’s favor as prayed for and maintaining and recognizing plaintiff’s provisional seizure upon all the property on which plaintiff claimed a lien and privilege, and ordering said property seized and sold, and directing that plaintiff be paid from the proceeds thereof the aforesaid judgment by preference and priority, defendant, by petition and order of June 3, 1955, appealed devolutively to this court.
The principal grounds urged for a reversal of the judgment are that the trial court erred in these instances, namely: (1) in holding that the contract constituting the basis of this action was properly and legally signed by C. E. Simmons on behalf and with the authority of the defendant corporation, and (2) in finding that plaintiff had established by a preponderance of the evidence the correctness of the account sued upon.
A resolution of the questions presented requires a brief discussion of the facts. The plaintiff entered into a written contract with the defendant September 18, 1953, to drill an oil well to a maximum depth of 3,200 feet on the aforesaid leased property of the defendant and at a location designated by defendant. In accordance with this contract the contractor was obligated to furnish, among other things, its drilling rig and the labor, fuel and water necessary for the completion of the contract at its expense. The defendant as the owner of the leased premises and of the contemplated well was to furnish at its expense all casing, tubing and well completion equipment. The consideration to be paid plaintiff for the drilling and completion of this well was $2.50 per lineal foot if oil was found below 1,700 feet and $2.25 per lineal foot if found above that depth. The well was drilled to a depth of 1,600 feet, and on September 23, 1953, casing was set. By the terms of the contract, waiting periods of time of 24 hours for the setting of casing and 48 hours for the oil string were provided for at the contractor’s expense. Defendant, however, was obligated to pay for any additional waiting time at the rate of $540 per 24-hour day while using drill stem and $500 per day while the drill stem was not in use. Moreover, the testimony shows that the pay roll expenses for the drilling crew alone approximated $300 per day. After allowing the 48 hours to permit the concrete to set or harden, plaintiff was ready to proceed with the completion of the well. At that time, however, defendant experienced financial difficulties and was unable to furnish the tubing, equipment, supplies and tools necessary for the completion of the well as it was obligated to do under the terms of the contract. A portion of the supplies had been purchased from Lowe Bros., who had not been paid therefor and who instructed that the supplies furnished by them not be used until payment therefor had been made. The completion of the well was, therefore, delayed because of defendant’s inability to supply the necessary equipment.
It was apparent to both plaintiff and defendant and defendant’s vice president and field manager, C. E. Simmons, that a con *876 siderable delay would accrue before defendant could adjust its financial affairs and pay for the equipment and supplies necessary for the completion of the well under the original contract. The $500 per day waiting time was beginning to accrue and sound business judgment dictated that the tubing and other equipment be furnished without delay or that some other course be pursued. Under these circumstances, in order to eliminate the expenditure by defendant of the $500 per day for each 24 hours of waiting time and to permit the removal of the rig to another location where it would earn $150 per day on a rental basis, the defendant, through its vice president and field manager, accepted the well with the casing set as completed, and agreed to pay the contract rate of $2.25 per Henal foot. It was first the understanding that Simmons, acting for defendant, would complete the well with his equipment, but a day or two later it was agreed that plaintiff would complete the well, using other equipment, including the draw works and gin pole of Simmons for a consideration of $18 per hour for the actual working time. Simmons’ equipment wás eventually to be used by defendant in operating the weir and the removal and installation of such equipment at the well site was to its advantage and interest. That the new agreement between plaintiff and defendant was in the interest of the defendant corporation in eliminating the $500 a day waiting charge provided under the original contract admits of no dispute.
Following the consummation of the second agreement, plaintiff submitted its invoice under the original contract, which was approved by Simmons and forwarded to defendant at its domicile in New Orleans. In due course but with some delay this invoice was paid by defendant’s check delivered to plaintiff October 10, 1953.
A statement covering the work performed and material furnished, in accordance with the subsequent contract, was likewise submitted to Simmons on the completion of the work, which was also approved by him and forwarded to defendant’s office. Payment of this invoice was refused and this suit followed.
As heretofore pointed out, the principal defense of the Little Creek Oil Company of Louisiana, Inc., is predicated upon the contention that C. E. Simmons, its vice president, who was in charge of its field operations, did not have power and authority to bind the corporation by contract or agreement. However, in the original contract C. E. Simmons represented the defendant corporation and his authority is not only not disputed but is affirmatively admitted in the record. The record discloses that Simmons was the only experienced oil operator connected with defendant, whose capitalization was somewhat limited and which was engaged principally in the development of oil, gas and mineral leases owned- by it in LaSalle Parish. The wells contemplated were of shallow depth. Simmons, as vice president and field manager, was fully clothed with authority to conduct the company’s drilling operations in that area. That both plaintiff and defendant’s agent and officer were in good faith in their negotiations is clearly shown by the record and admits of no contrary contention. Therefore, as Simmons, as vice president and field manager of defendant, represented the defendant in the execution of the original written contract and acted for and on behalf of defendant corporation in the subsequent agreement, the benefits of which inured to and were accepted by defendant, his authority to represent the defendant in the affairs and operations of defendant, which had been placed in his charge, can not now be questioned or denied. A corporation is bound where its officer or agent acts without, or in excess of, his actual authority, if he acts within the scope of an apparent authority with which the corporation has clothed him. That this is the rule is recognized in 19 C.J.S., Corporations, § 996, p. 458, wherein it is stated:
“Although an officer or agent acts without, or in excess of, his actual authority, if he acts within the scope of an apparent authority, with which *877 the corporation has clothed him by holding him out or permitting him to appear, as having such authority, the corporation is bound thereby in favor of a person who deals with him' in good faith in reliance on such apparent authority, as where an officer is allowed to exercise a particular authority with respect to the business of the corporation, or a particular branch of it, continuously and publicly, for a considerable time; * * *
Although the record does not establish that Simmons’ authority was limited in any way or to any extent within the course of the operation of defendant’s business in LaSalle Parish, plaintiff, a third person, would not be bound or affected had Simmons possessed only a limited authority, unknown to it, where he had been held out by the defendant as possessing full authority over the matters concerned. This general principle is recognized in the jurisprudence of this State. In Slagle v. Peyton, 182 La. 358, 162 So. 12, 15-16, it was stated:
“ ‘It is now well settled that when, in the usual course of business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. This is only the application of the principle that usual employment is evidence of the powers of an agent and the principal is held responsible for the acts of his agent within the apparent authority conferred on the agent.’ 7 R.C.L. 623. See, also, Fletcher on Corporations, § 2098; Corpus Juris, vol. 14A, pp. 423, 424, § 2275; City Savings Bank & Trust Co. v. Shreveport Brick Co., 172 La. 471, 134 So. 397; Uline Loan Co. v. Standard Oil Co., 45 S.D. 81, 185 N.W. 1012, 27 A.L.R. 585.
“ * * * What we hold is that this was intended to be a transaction for the corporation, which it cannot now, under the circumstances, repudiate.”
In quoting from Fletcher, Cyclopedia Corporations (Perm.Ed.), sec. 466, pp. 316, 317, this principle is further recognized and stated by the Supreme Court in Morgan v. Cedar Grove Ice Co., 215 La. 741, 41 So.2d 521, 523, as follows:
“ ‘ * * * a corporation is bound by contracts entered into by its officers and agents acting on behalf of the corporation and for its benefit, provided they act within the scope of their express or implied powers, and it makes no difference that the contracts are improvident, for the principal is bound as if the errors of judgment of the agent had been made by it, unless the agent was guilty of fraud in making the contract. An agent to whom a corporation intrusts the management of its local affairs may bind his company by a contract necessary and proper to be made in the ordinary prosecution of its business. And a defense interposed by a corporation that its agent had no authority to execute a contract on its behalf is looked upon with disfavor, especially where the contract has been executed in whole or in part. “It is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts.” ’ (Italics ours.) See also 2 Thompson On Corporations (3d Ed.), sec. 1518, p. 1110”.
See also Acadian Production Corporation of Louisiana v. Tennant, 222 La. 653, 63 So.2d 343.
It is not always necessary that the authority of an officer of a corporation be shown by resolution of its board of directors. The trial court correctly held that the defendant corporation could not accept and profit by the benefits arising from the cancellation of the original contract and its release from the obligation h> pay $500 a day waiting time and then repudiate the acts of its officer and the obligations arising *878 from his acts. Simmons’ acts were in the interest of defendant and, as heretofore stated, were in keeping with sound business judgment. Under such circumstances, the formality of a resolution of defendant’s board specifically conferring authority upon him was unnecessary. For instance, in Gueydan v. T. P. Ranch Company, 156 La. 397, 403, 100 So. 541, 543, it was stated:
“It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may not, any more than an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. P. L. Cusachs, Ltd., 114 La. 744, 38 So. 539; Gair Co. v. Columbia Rice [Packing] Co., 124 La. [193] 194, 50 So. 8; Boudreaux v. Feibleman, 105 La. [401] 404, 29 So. 881.”
Under the facts and circumstances of this case, as herein above detailed and in keeping with the legal principles just cited, the conclusion follows that a resolution of defendant’s board was not necessary to confer authority upon C. E. Simmons, its vice president and field manager, to alter to its advantage the original contract executed by him on behalf of defendant by the subsequent agreement. The conclusion is likewise inescapable that not only did Simmons have actual authority to so contract with plaintiff but that he was held out by defendant as possessing such authority. The defendant is, therefore, bound by the aforesaid contract entered into for and on its behalf.
That plaintiff performed the labor and completed the work and task contracted under the subsequent agreement under the constant supervision and direction of defendant’s agent and in strict accord with said contract and established drilling practices is fully established by the record. The invoice itemizing the work done and materials furnished bears the approval of defendant’s field manager and its correctness is established by the testimony of P. E. Trichel.
From our review of the record and for the reasons stated, we conclude that not only no manifest error appears in the judgment appealed from but that it is eminently correct. Accordingly, it is affirmed at appellant’s cost.
Affirmed.