403 So.2d 100 (1981)
GREENLEAF PLANTATION, INC., Plaintiff-Appellant,
v.
John P. KIEFFER and Arnold R. Kilpatrick, Defendants-Appellees.
No. 8231.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1981.
Rehearing Denied September 22, 1981.
Michael Henry, Natchitoches, for plaintiff-appellant.
Gahagan & Gahagan, Russell E. Gahagan, Natchitoches, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX, STOKER, LABORDE and BIENVENU[1], JJ.
LABORDE, Judge.
Plaintiff, Greenleaf Plantation, Inc. (Greenleaf), appeals the trial court's denial *101 of its suit for specific performance of an option to purchase property from defendants, John Kieffer[2] and Arnold R. Kilpatrick. The crucial issue on appeal involves whether the option was validly exercised by Greenleaf. We hold that it was and we reverse on that basis.
Albin Johnson and James Maxey are and have been the sole shareholders and officers of Greenleaf Plantation, Inc., a corporation formed by them to raise cattle and farm soybeans. Sometime prior to January of 1979, defendant landowners, Kieffer and Kilpatrick, contacted Johnson and Maxey to see if they were interested in leasing or purchasing from them a large[3] tract of farmland in Grant Parish. Negotiations followed and in January of 1979, Greenleaf, through its president Albin Johnson, entered into a one year lease with defendants. The lease began February 1, 1979, and expired January 31, 1980, and called for a rental payment of $10,000. Johnson signed the document on behalf of Greenleaf.
Contemporaneously with the signing of the lease the defendants executed an agreement granting Greenleaf an option to purchase the leased premises for an agreed upon amount per acre. This option agreement is what we are concerned with on appeal. Johnson also signed this document of behalf of Greenleaf. The option was to terminate on November 1, 1979, but could be exercised by Greenleaf by delivering to defendants, within thirty days prior to November 1, 1979, written notice of its (Greenleaf's) intent to exercise the option.
Pursuant to the lease agreement, Greenleaf paid defendants $10,000 in lease rentals and farmed the land for the one year lease term.
On August 10, 1979, (more than thirty days prior to November 1, 1979), Greenleaf, through Johnson, expressed in writing to defendants its intention to exercise the option to purchase the property. In ensuing correspondence, plaintiff's attorney, on October 11, 1979, (which was within thirty days prior to November 1, 1979), notified defendants of plaintiff's intention to exercise the option. Subsequently, some title questions regarding the tract were discovered, yet on January 22, 1980, plaintiff's attorney informed the defendants that plaintiff decided to complete the transaction despite these title objections. On January 28, 1980, defendant Kieffer issued notice to plaintiff to vacate the leased premises within thirty days. On February 8, 1980, plaintiff's attorney notified defendants of the closing date set for February 19, 1980. Finally, on February 22, 1980, defendants' attorney responded that his clients had no intention of conveying the property. Thereafter, on March 3, 1980, plaintiff sued to force the sale of the property.
Following a trial on the merits, the district court rendered judgment in defendants' favor for two reasons: (1) There was no meeting of the minds between plaintiff and defendants; and (2) Albin Johnson, Greenleaf's president, did not have necessary written authority to contract for the purchase of immovable property. Greenleaf appeals.
An option to purchase immovable property requires for its validity reciprocal consent of both parties as to the thing, the price, and the terms; evidenced by a written instrument. LSA-C.C. art. 2462. After a review of the record, we are satisfied that these requirements were met. We believe the crucial issue on appeal is whether the option to purchase was validly exercised, thus entitling plaintiff to specific performance of the agreement.
*102 In determining whether the option to purchase was validly exercised, we begin by viewing the agreement itself.
The pertinent provision in the option reads:

"II. PERIOD OF OPTION AND EXERCISE
"This option shall terminate on November 1, 1979, and shall be exercised by PURCHASER, if it so desires in the following manner: Within thirty (30) days prior to November 1, 1979, PURCHASER shall deliver to OWNERS, their heirs and assigns, or their administrators or agents, written notice of PURCHASERS intent to exercise the option. If PURCHASERS do exercise this option to purchase prior to November 1, 1979, OWNERS do hereby grant, a ninety (90) day period of time after November 1, 1979 for the closing of the transaction passing title."
As we interpret this agreement, defendants negotiated and bargained for only the requirement that "purchaser shall deliver to owners ... written notice of purchasers intent to exercise the option." (Emphasis added.)
Returning to the facts, we are satisfied that defendants, pursuant to the agreement, were indeed given timely notice in writing that plaintiff intended to exercise the option to purchase the tract of land. This written notice occurred in the form of a letter from plaintiff's attorney mailed on October 11, 1979, notifying defendants of plaintiff's intention to exercise the option. This letter followed an earlier letter of August 10, 1979, wherein Greenleaf, through Johnson, expressed the same intent. All that defendants bargained for in order to validly exercise the option was written notice of that intent. The record supports that this is precisely what they received.
Defendants argue that Greenleaf was never bound by the exercise of the option because the corporation, through its board, never authorized it through a corporate resolution.
While we agree that Greenleaf's board of directors did not pass a corporate resolution authorizing Johnson either to enter the option to purchase or to exercise the option, we disagree that this lack of a resolution is fatal. See Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4th Cir. 1976) writ denied, 339 So.2d 11 (La.1976); Louisiana National Bank of Baton Rouge v. Heroman, 280 So.2d 362 (La.App. 1st Cir. 1973) writ refused, 281 So.2d 755 (La.1973); Richard Apartments, Inc. v. Shadix, 150 So.2d 602 (La. App. 4th Cir. 1963); Trichel Contracting Company v. Little Creek Oil Company of Louisiana, 84 So.2d 874 (La.App. 2nd Cir. 1956); and Ideal Savings & Homestead Association v. Kerner, 208 La. 978, 23 So.2d 200 (1945).
While none of these cases is precisely on point, a common thread in each is that a corporate officer acted on his corporation's behalf without a resolution from its board of directors, yet in spite of that the act was nevertheless upheld by the court. In the Trichel Contracting Co. case, supra, the court stated:
"It is not always necessary that the authority of an officer of a corporation be shown by resolution of its board of directors. The trial court correctly held that the defendant corporation could not accept and profit by the benefits arising from the cancellation of the original contract and its release from the obligation to pay $500 a day waiting time and then repudiate the acts of its officer and the obligations arising from his acts. Simmons' acts were in the interest of defendant and, as heretofore stated, were in keeping with sound business judgment. Under such circumstances, the formality of a resolution of defendant's board specifically conferring authority upon him was unnecessary. For instance, in Gueydan v. T. P. Ranch Company, 156 La. 397, 403, 100 So. 541, 543, it was stated:
"It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may not, any more than *103 an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. P. L. Cusachs, Ltd., 114 La. 744, 38 So. 539; Gair Co. v. Columbia Rice [Packing] Co., 124 La. [193] 194, 50 So. 8; Boudreaux v. Feibleman, 105 La. [401] 404, 29 So. 881."
Under the facts and circumstances of this case, as herein above detailed and in keeping with the legal principles just cited, the conclusion follows that a resolution of defendant's board was not necessary to confer authority upon C. E. Simmons, its vice president and field manager, to alter to its advantage the original contract executed by him on behalf of defendant by the subsequent agreement. The conclusion is likewise inescapable that not only did Simmons have actual authority to so contract with plaintiff but that he was held out by defendant as possessing such authority. The defendant is, therefore, bound by the aforesaid contract entered into for and on its behalf."
In the Heroman case, supra, the plaintiff Bank instituted a deficiency judgment proceeding against personal endorsers of the corporate defendant, Southern Real Estate Investment, Inc. The major defense urged by the individual defendants was that the executory process was improper because there was no resolution by the corporation authorizing its president to execute the note and mortgage at the time of the execution of the note and mortgage. There was a resolution that was passed by the corporation two days after the note and mortgage were signed. Thus, the First Circuit was faced with the same issue that is before this Court: the authority of the president to bind the corporation in the absence of a resolution. The Court stated and held:
"We cannot accept defendant's contention that the corporate resolution must be prospective in nature and terminology so that unless a corporate resolution exists prior to the time of the execution of a note and mortgage, the payee or bearer of the mortgage note will not be able to resort to executory process, notwithstanding the presentation to the court at the time of instituting the executory proceeding of a resolution of the corporate mortgagor expressly ratifying the incurrence of the debt and mortgaging of collateral therefor. The only purpose of the corporate resolution is to confirm the intent and willingness of the corporation to incur the obligation or indebtedness. The "authorization" in that regard can be proven by authentic evidence of a corporate resolution to that effect, either prospective or retrospective in nature and terminology."
Based on the above principles, the assertion by defendants in the instant case that a resolution was required authorizing Johnson to exercise the option is misdirected. Instead, the more important question is whether Greenleaf had the intent and willingness to incur the obligation. In this regard, the record fully supports that it did. The testimony at trial established that Johnson and Maxey are the sole shareholders of Greenleaf. Stated another way, they own 100% of its stock. Further, the testimony not only establishes that both Johnson and Maxey were involved in the option agreement negotiations, it also shows that the exercise of the option was in fact authorized by both of them. For example, the letter of August 10, 1979 from Johnson is evidence of his intent and willingness to be bound. The October 11, 1979 letter from Greenleaf's lawyer shows additional authorization.
Before leaving the subject of the necessity of a corporate resolution, we note that defendants did not require that the notice to exercise the option be accompanied by authorization of plaintiff's board of directors. Nor did defendants question that lack of such authority upon receipt of the notice which occurred during a period when it could have been easily remedied. In fact, it was not until the time for giving written notice had passed and plaintiff had undertaken time consuming and costly efforts toward consummation of the sale including such things as retention of an attorney to *104 examine title and prepare necessary documents as well as employment of a surveyor as provided in the option agreement, that defendantswithout explanation for their motivesseized upon these objections to try and free themselves from their end of the agreement. In addition, defendants now take the position that a corporate resolution was necessary for the option but apparently were satisfied that no resolution was necessary for the lease agreement since the fruits of the lease agreement ($10,000 in lease rentals) were enjoyed by them. We are not inclined to allow defendants to pick and choose from documents that benefit them and to reject other documents that do not, basing the rejection of the latter on the lack of corporate resolution authorizing Johnson's acts. An additional factor casting doubt on defendant's sincerity is that it was defendants who in the first place contacted both Johnson and Maxey and initiated the negotiations which led to the agreements. At no time did defendants question the authority of either Johnson or Maxey, nor did they (defendants) ever demand to see a corporate resolution.
Defendants also contend that since Greenleaf was never bound by the option agreement, then neither were they. Because we find that Greenleaf was bound, we must disagree with defendants' contention.
We again refer to the option agreement which in part II provides that the option shall be exercised within 30 days prior to November 1, 1979. If timely exercised, then a 90 day period of time after November 1, 1979, is granted for the closing of the transaction passing title. According to our calculations, this closing period ended on January 31, 1980. Under part VI C of the agreement, the parties provided that if title objections could not be cured within the 90 day period following November 1, 1979, then the closing date may be postponed for such additional time as may be necessary, not to exceed 60 days.
Returning to the facts of the instant case we are satisfied upon the record that the October 11, 1979 letter from Greenleaf's attorney was a timely, valid exercise of the option. Thus, the parties were entitled to the 90 day closing period. About this time, problems regarding the boundary lines arose. All parties, including Johnson and Maxey and Kieffer and Kilpatrick, were aware of and involved in attempts to correct these title problems during the 90 day period. Finding that to be impossible, plaintiff on January 22, 1980, mailed a letter to Kieffer invoking the sixty day extension period in order to cure the title objections and close the transaction. On February 11, 1980, defendants notified plaintiff that they would not sign the deed unless ordered by the court to do so. On March 3, 1980, during the 60 day extension, plaintiff filed suit for specific performance to enforce the option to purchase. Attached to the petition was a verification stating that Johnson and Maxey, representing 100% of Greenleaf's shareholders, declared that the allegations of the petition were true and correct to the best of their knowledge and belief.
We are convinced that under jurisprudence regarding the doctrines of estoppel, informal ratification, and apparent authority, Greenleaf was bound by Johnson's exercise of the option. Skye Realty Co. v. Diversified Ins. Agency, Inc., 221 So.2d 871 (La.App. 3rd Cir. 1969); General Finance Corp. of New Orleans v. Harrell, 188 So.2d 211 (La.App. 1st Cir. 1966); Russ v. United Farm Equipment Co., 230 La. 889, 89 So.2d 380 (1956); and Acadian Production Corp. of La. v. Savanna Corp.,222 La. 617, 63 So.2d 141 (1953). Having found that Greenleaf was bound, we hold that defendants were equally bound.
For the reasons assigned, the judgment of the trial court is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff granting it specific performance of the option agreement entered into with defendants. All costs to date are assessed against defendants.
REVERSED AND RENDERED.
CULPEPPER, J., concurs and assigns reasons.
*105 DOMENGEAUX, J., dissents and assigns reasons.
STOKER, J., dissents for the reasons assigned by DOMENGEAUX, J., and assigns additional reasons.
CULPEPPER, Judge, concurring in the majority opinion.
In my view, the essential issue in this case is whether the letter written by Albin S. Johnson, president of Greenleaf, dated August 10, 1979 and received timely by defendants constituted exercise of the option by Greenleaf to purchase, even though there was no formal resolution of the board of directors of Greenleaf authorizing Johnson to exercise the option.
I think Johnson clearly had apparent authority from Greenleaf to exercise the option. He was president of the corporation and had signed the original lease and option agreement. In a subsequent letter written by Greenleaf's attorney, Mr. Henry, on October 11, 1979, the exercise of the option by Johnson was recognized and defendants were advised of plans to examine the title and have a survey made, all in accordance with the option agreement. Defendants were fully aware of all of these actions by Johnson as the apparent agent for Greenleaf. Actually, defendants participated in negotiations regarding the title difficulties. I think there is no question that Johnson had apparent authority from Greenleaf to exercise the option on its behalf and that Greenleaf was bound by Johnson's actions in exercising the option. Since Greenleaf was bound by Johnson's exercise of the option, it necessarily follows that a binding contract between Greenleaf and defendants existed from the time of the exercise of the option by Johnson, and that both parties had a right to enforce the contract by a suit for specific performance.
In my view, it would not only be inequitable but inconsistent with legal principles regarding obligations to hold that although Greenleaf was bound by the actions of Johnson in exercising the option with apparent authority, the defendants were not bound, and that defendants could proceed to act and negotiate all during the time of the title examination and survey as if the option were being exercised and then change their position and make the technical argument that there was no exercise of the option by Greenleaf because there was no resolution of its board of directors.
For the reasons assigned, I concur with the majority opinion.
DOMENGEAUX, Judge, dissenting.
At issue is whether a corporation can specifically enforce an option to purchase immovable property when the option to purchase was purportedly accepted or exercised by either its president or its attorney, neither of whom had written authority to buy (or sell) immovable property on behalf of the corporation at the time they attempted to exercise the option or at any time prior to November 1, 1979, at which time the option expired under its own terms.
In January of 1979, plaintiff, Greenleaf Plantation, Inc. (Greenleaf), leased for agricultural purposes a large tract of land in Grant Parish from John Kieffer and Arnold R. Kilpatrick, the defendants herein. The one year lease, which began February 1, 1979, and expired January 31, 1980, called for a rental payment of $10,000.00.
Contemporaneously with the signing of the lease, the defendants executed an agreement granting Greenleaf an option to purchase the leased premises for an agreed upon amount per acre. The president of Greenleaf, Albin Johnson, signed both documents on behalf of Greenleaf. The option was to terminate on November 1, 1979, but could be exercised by Greenleaf by delivering to the defendants, within thirty days prior to November 1, 1979, written notice of its (Greenleaf's) intent to exercise the option.
On August 10, 1979, (more than thirty days prior to November 1, 1979), Greenleaf, through Johnson, expressed in writing to defendants its intention to exercise the option to purchase the property. In ensuing correspondence, plaintiff's attorney, Michael Henry, on October 11, 1979, (which *106 was within thirty days prior to November 1, 1979), notified defendants of Greenleaf's intention to exercise the option, and on January 22, 1980, Greenleaf's attorney informed the defendants that Greenleaf decided to complete the transaction despite certain title objections. However, on January 28, 1980, defendant Kieffer issued notice to Greenleaf to vacate the leased premises within thirty days, but on February 8, 1980, Greenleaf's attorney notified defendants of the closing date set for February 19, 1980. Finally, on February 22, 1980, defendants' attorney responded that his clients had no intention of conveying the property because they felt that Greenleaf either never had a valid option, or forfeited or annulled the option by other actions. Thereafter, on March 3, 1980, plaintiff sued to force the sale of the property.
After trial was conducted on September 16, 1980, the district court rendered judgment on October 23, 1980, in defendants' favor for two reasons: (1) There was no real meeting of the minds between the plaintiff and defendants; and (2) Albin Johnson, Greenleaf's president, did not have the necessary written authority to contract for the purchase of immovable property. Greenleaf has appealed and the majority has decided in Greenleaf's favor, holding that its attorney's letter to the defendants constituted timely notice of its intent to exercise the option. I disagree.

NECESSITY FOR WRITTEN AUTHORITY
Albin Johnson and James Maxey have been Greenleaf's only shareholders and officers since Greenleaf was incorporated on March 14, 1977. However, it is uncontested that neither Johnson nor Maxey nor the attorney, Michael Henry, was ever given written authority by the corporation to buy, sell, or otherwise contract for the purchase of real estate on its behalf prior to the filing of suit for specific performance on March 3, 1980. Nevertheless, the majority concludes that the attorney's letter of October 11, 1979, effectively exercised the option on Greenleaf's behalf, entitling it to specific performance under La.C.C. Art. 2462. By so holding, the majority ignores firmly entrenched legal principles which require contracts affecting immovable property to be in writing.
Not only must transfers of immovable property be in writing, La.C.C. Art. 2275, but a contract granting an option to buy immovable property must be in writing, La.C.C. Art.2462, and the exercise of an option must also be in writing. Barchus v. Johnson, 151 La. 985, 92 So. 566 (1922), since these contracts concern the disposition of immovables. Most importantly, however, Louisiana courts have required that a mandate or power of attorney to sell or purchase land for another must also be in writing. La.C.C.Art. 2992; Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682 (1949); Tchoupitoulas, Inc. v. McCullough, 349 So.2d 346 (La.App. 4th Cir. 1977), writ denied 351 So.2d 166 (La.1977); Rebman v. Reed, 335 So.2d 37 (La.App. 4th Cir. 1976), writ denied 338 So.2d 699 (La.1976); White v. Batson, 317 So.2d 205 (La.App. 1st Cir. 1975), writ denied 320 So.2d 915 (La.1975); Opelousas-St. Landry Bank & Trust Co. v. Bruner, 13 La.App. 337, 125 So. 507 (1st Cir. 1929).
Since a mandate or power of attorney to sell or purchase immovable property for another must be in writing, authority to exercise an option to purchase immovable property on behalf of another must also be in writing. The exercise of an option has the same practical effect as a sale since an option, once accepted, accords to either party the right to specifically enforce the agreement (See C.C. Art. 2462). Furthermore, since the exercise of an option must be in writing, it seems only logical to require that the authority to exercise the option be clothed with equal dignity.
The majority sidesteps this issue by observing that all the defendants bargained for in order for Greenleaf to validly exercise the option was written notice of that intent and that "this is precisely what they [defendants] received." In view of the significant rights which attach to an accepted option, I would hold that the defendants *107 bargained for written notice of that intent by one legally authorized in writing to exercise the option.[1] Since no one legally authorized in writing to exercise the option on behalf of plaintiff ever communicated written notice of Greenleaf's intent prior to November 1, 1979, the option expired under its own terms. Later efforts to ratify the attempted exercise of the option must fail because the option expired when not timely exercised by one legally authorized in writing.
The majority concludes that the lack of a corporate resolution authorizing Johnson to exercise the option does not defeat Greenleaf's claim to specific performance, and cites several cases wherein an act performed by a corporate officer was upheld by the courts even though the officer lacked written authority to so act.
Bonura v. Christiana Bros. Poultry Co. of Gretna, Inc., 336 So.2d 881 (La.App. 4th Cir. 1976), writ denied 339 So.2d 11 (La.1976); Richard Apartments, Inc. v. Shadix, 150 So.2d 602 (La.App. 4th Cir. 1963); and Trichel Contracting Company v. Little Creek Oil Company of Louisiana, 84 So.2d 874 (La.App. 2nd Cir. 1956), are all easily distinguishable from the instant case. In none of those cases did the corporate officer engage in a contract involving the transfer of immovable property. Thus, written authority to act on the corporation's behalf was not required in any of those cases.
In Louisiana National Bank of Baton Rouge v. Heroman, 280 So.2d 362 (La.App. 1st Cir. 1973), writ refused 281 So.2d 755 (La.1973), the president of Southern Real Estate Investments, Inc. executed a note and mortgage on behalf of Southern at a time when no written authority for him to do so existed. Two days later, the corporation adopted a resolution which the court found constituted a ratification of the president's execution of the note and mortgage. Subsequently, the mortgaged property was judicially sold pursuant to the executory proceeding. Then the plaintiff instituted this suit against the personal endorsers of the note to obtain a deficiency judgment. Over the endorsers' contentions, the court found that the retrospective nature of the ratifying resolution was effective.
The Heroman case is distinguishable from the instant case because, in Heroman, the president's authority to act for Southern was never questioned prior to the adoption of the resolution ratifying the president's actions, whereas in the instant case the defendant-landowners' refusal to sell preceded both Greenleaf's suit and the shareholder's attempted ratification. Furthermore, their refusal came after the option expired under its own terms.
Ideal Savings & Homestead Association v. Kerner, 208 La. 978, 23 So.2d 200 (1945), is also distinguishable. There, the Homestead advertised a certain piece of its property for sale. The property was sold to Kerner with the president of the Homestead signing on its behalf as vendor. The sale, authentic in form, recited that the president was duly authorized by the Board of Directors through a resolution attached to the act of sale. Fifteen months later, after Kerner had improved the property, the Homestead sued to annul and cancel the sale of the property to Kerner on the ground that its president was without authority to sell the property. It appears that the Homestead's president never accounted for the purchase price. It also appears that the resolution authorizing the president to purchase the property was never attached to the sale. Without deciding whether or not a resolution was in fact passed by the Homestead's Board of Directors, the Supreme Court held that the manner in which the Homestead conducted its affairs justified Kerner's good faith belief that the president and directors of the corporation, who had participated in the transaction, had *108 the ostensible and apparent authority to sell the property and receive the purchase price on behalf of the Homestead. Thus, the Homestead was estopped from asserting lack of authority in its president to sell the property against the innocent good faith purchaser, Kerner.
The Kerner holding cannot serve as the basis for a reverse application of the apparent authority doctrine here. While this doctrine may be used against corporations to hold them to acts of their agents, Kerner does not hold, and the majority cites no cases which do hold, that the doctrine can be used by corporations in their own behalf against persons who deal with the corporation's unauthorized agent. With only Kerner as authority, I would refuse to apply the apparent authority doctrine here to compel defendants to sell their immovable property to a corporation based upon the representation of an unauthorized agent.
Even if, as the majority suggests, the above cases stand for the proposition that Johnson had the requisite (albeit unwritten) authority to accept the option on Greenleaf's behalf, since he was a stockholder as well as the president of Greenleaf, Greenleaf's suit for specific performance must be dismissed because the majority has held that it was the attorney's notice of October 11, 1979, rather than Johnson's notice of August 10, 1979, which constituted the timely written notice of plaintiff's intent to exercise the option.[2]
Plaintiff's attorney was neither stockholder nor officer of Greenleaf when he sent his written notice to defendants, and there was no evidence that he was ever authorized, before or after November 1, 1979, by Greenleaf to exercise the option. Since the attorney's notice was not exercised by the purchaser (Greenleaf) nor delivered by the purchaser (see Footnote 1), and there was no evidence that he was authorized by Greenleaf, I conclude that the attorney's letter of October 11, 1979, had no effect whatsoever.
It is of no moment that defendants did not question the authority of Johnson or the attorney prior to November 1, 1979. As the party seeking to exercise the option, it was incumbent upon Greenleaf to provide a valid written exercise of the lease. Failing to do this within the prescribed time, Greenleaf should not now be heard to complain that the defendants have refused to sell their property on the ground that Greenleaf never exercised the option.
The majority is "not inclined to allow" the defendants to urge, on the one hand, that a corporate resolution of authority was necessary for one of Greenleaf's agents to validly exercise the option, while contending, on the other, that such a resolution was unnecessary for the lease agreement to be valid. I see nothing inconsistent or wrong with such a position. In fact, I believe defendants' position is well-founded. Leases of immovable property need not be in writing, La.C.C. Art. 2683, therefore an agent's authority to lease immovable property for another need not be in writing, Hammonds v. Buzbee, 170 La. 573, 128 So. 520 (1930).
Finally, I disagree with the majority's belief that "the more important question is whether Greenleaf had the intent and willingness to incur the obligation." Because this is a transaction involving the transfer of ownership of immovable property, the most important inquiry should be whether Greenleaf, acting through an agent duly authorized in writing, validly exercised its option to purchase the defendants' property, thereby entitling it to specific performance. I would hold that it did not, and is therefore not entitled to specific performance.
For the above reasons, I respectfully dissent.
STOKER, Judge, dissenting.
I dissent for the reasons assigned by Judge Domengeaux. Additionally, it is appropriate *109 to emphasize that the evidence indicates the plaintiff corporation, Greenleaf Plantation, Inc., never in fact authorized either its president or its attorney at law to act to accept the option. Hence, we are faced with a situation in which it is not only a question of lack of written authority for a corporate agent to act for the corporation but also question of no authority at all.
NOTES
[1] Judge C. Thomas Bienvenu, Jr., Sixteenth Judicial District Court, Parish of St. Martin, participated as Judge Ad Hoc in this decision.
[2] John P. Kieffer died April 19, 1981. Pearl Kieffer, his widow, administratrix of his estate is the voluntary appellee pursuant to Rule 13, Section 1 of the Uniform Rules of the Courts of Appeal.
[3] The size of the tract was never established. According to the property description, the tract contains "244 acres more or less, together with all alluvial deposits adjacent there to." The defendant property owners believe the tract contains about 565 acres. However, a survey of the property commissioned by Greenleaf placed the size of the tract at 461 acres; the ownership of the other 104 acres is in dispute but has no bearing on the outcome of this case.
[1] According to the majority opinion, anyone could provide written notice of Greenleaf's intent to exercise the option despite language in the provision of the option quoted by the majority, which plainly provides: "This option ... shall be exercised by PURCHASER" and "PURCHASER shall deliver to OWNERS ... written notice of PURCHASER'S intent to exercise the option." (Italics added) Since the purchaser was a corporation, only one duly authorized in writing to act on its behalf could exercise the option.
[2] Johnson's written exercise of the option dated August 10, 1979, was not delivered "within thirty (30) days prior to November 1, 1979" (emphasis added) as required by the terms of the option, a fact which the majority must concede since it holds that the attorney's letter of October 11, 1979 constituted the requisite notice.