LABORDE, Judge.
Guaranty Bank & Trust Company brought suit against Associate Pipe Service, Inc. (Associate) to recover $225,-566.23, the balance due on a promissory note executed by Associate. Added as party defendants were four individuals who had executed separate continuing guaranty contracts, in the amount of $200,000.00 each, on behalf of Associate. Default judgments were obtained against Associate and three of the guarantors. One of these, appellee Jack Wilson, paid the bank in full, and was thereby subrogated to the bank’s rights against the fourth guarantor, George Sfeir. After a bench trial, Wilson obtained a judgment declaring Sfeir liable, under his Continuing Guaranty, for a one-fourth virile share of the corporation’s indebtedness, plus legal interest, trial costs, and attorney fees. Sfeir appeals. Basing our decision on the explicit provisions of Sfeir’s Continuing Guaranty, we affirm.
The essential facts are not in dispute. In 1979, Associate borrowed approximately $180,000.00 from the Guaranty Bank & Trust Company of Lafayette, Louisiana. At the same time, four individuals, including Wilson and Sfeir, signed standard-form continuing guaranty agreements. The substance of each Continuing Guaranty provides that each guarantor agree to pay the bank or its assignees any indebtedness of the corporation, then existing or thereafter arising, up to $200,000.00. Each Continuing Guaranty was to remain in effect until written notice of its discontinuance was delivered to an officer of the bank. The terms also provide that such discontinuance would not affect the guarantor’s liability for already-existing corporate debts.
In 1981, Associate borrowed an additional $40,000.00 from the bank, issuing a second promissory note in that amount. On March 22, 1982, the bank restructured Associate’s outstanding debt, and accepted a third promissory note in the amount of $180,720.77. No new advances were made to Associate in exchange for this third note which, as the trial court concluded, represented nothing more than the unpaid bal- *1067 anees of the first and second notes plus interest. The first two notes were neither marked “paid” nor returned to the corporation.
A corporate resolution of Associate, dated November 28, 1979, required the signatures of Wilson, Sfeir and one Maurice M. Bledsoe on all promissory notes issued by the corporation. All three signed the first two notes. Sfeir did not, however, sign the third note.
The issue presented for resolution is whether the absence of Sfeir’s signature on the third promissory note relieves him of virile share liability, under the Continuing Guaranty, for the debt evidenced by that third note.
Sfeir initially argues that the restrictive terms of the resolution, which require his signature on corporate promissory notes, limited his liability under the Continuing Guaranty to those debts evidenced by promissory notes executed in accordance with that resolution. We reject the argument without hesitation. The resolution authorizes Sfeir, Wilson and Bledsoe to collectively execute promissory notes. As appellee Wilson properly points out, the existence of the resolution does not mean that the signatories of the third note, Wilson, Bledsoe and Melancon (Melancon apparently replaced Sfeir in January, 1982) did not also have such authority. When the third note was executed, those three individuals constituted a majority of the corporation’s Board of Directors. Under the doctrines of estoppel, informal ratification, and apparent authority, the corporation itself could not, in these circumstances, have escaped liability under the note. Greenleaf Plantation, Inc. v. Kieffer, 403 So.2d 100 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 675 (La.1981).
But Sfeir’s liability arises by virtue of the Continuing Guaranty, a contract separate and distinct from the third promissory note, and in no way dependent for its efficacy on adherence to resolutions of the corporation. Similar continuing guaranty agreements have been equated by our Supreme Court with suretyship contracts. First National Bank of Crowley v. Green Garden Processing Company, Inc., 387 So.2d 1070 (La.1980). As a contract, the Continuing Guaranty in the instant suit has the effect of law for the parties. La.Civ. Code art. 1901.[1] Assuming the validity of the Continuing Guaranty, an assumption not challenged by appellant, we may look to its text for resolution of this case.
The Continuing Guaranty provides in pertinent part:
“I hereby bind and obligate myself, my heirs and assigns, in solido with said debtor, for the payment of [the corporation’s] indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to, and binding myself, my heirs and assigns, by all the terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto[.]” (emphasis added)
The contract further provides:
“IT IS EXPRESSLY AGREED that this continuing guaranty is absolute and complete, and that acceptance and notice of acceptance thereof by the Bank are therefore unnecessary and they are hereby expressly waived, and the same shall remain in force until written notice of its discontinuance shall be delivered to one of the executive officers of the Bank, but such discontinuance shall not affect my liability on any debts and/or obligations of the debtor then existing nor the liability of any other party in the premises.”
Sfeir does not dispute the fact that written notice of discontinuance, required by the contract, was not given until well after the indebtedness of the corporation arose.
The trial court concluded that the third promissory note was mere evidence of earlier-contracted indebtedness. The ob *1068 ject of the suit thus falls squarely within the terms of the Continuing Guaranty, a fact which buttresses appellee Wilson’s position that the corporate resolution (requiring Sfeir’s signature on corporate promissory notes) created no bar to Sfeir’s liability. With our attention focused on the Continuing Guaranty, the irrelevance of the corporate resolution seems clear.
We therefore hold that Sfeir’s liability was unaffected' by either the issuance or any deficiency of the third promissory note. Since we base our holding on the plain terms of the Continuing Guaranty, appellant’s second assignment of error, in which he argues that the third note operated as a novation and discharge from earlier contracted liability, merits no discussion.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. "Agreements legally entered into have the effect of laws on those who have formed them.” (current version at La.Civ.Code art. 1983)