535 So.2d 1156 (1988)
L & L INDUSTRIES, INC., Linda Gail G. Lott and Leslie L. Lott, Sr., Appellants,
v.
PROGRESSIVE NATIONAL BANK, et al., Appellees.
No. 20088-CA.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1988.
Carrol L. Spell, Sr., Lafayette, for appellants, L & L Industries, et al.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley and James A. Mijalis, *1157 Shreveport, for appellees, Progressive Nat. Bank, Ron C. Boudreaux, Riemer Calhoun, Jr. and Riemer Calhoun, Sr.
Herman L. Lawson, Mansfield, for appellee, Ron C. Boudreaux.
Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This is an appeal by plaintiffs Leslie Lott, Linda Lott and L & L Industries (L & L) from the judgment rejecting their demands against defendants Reimer Calhoun, Jr., Reimer Calhoun, Sr., Ron Boudreaux, and Progressive National Bank (Progressive).
Plaintiffs filed suit June 23, 1986, alleging that Progressive, through its officers and directors, "entered into a course of action calculated to force petitioner, L & L Industries, Inc., into a position whereby said company would either be foreclosed upon by said bank or forced into a financial posture requiring complete liquidation, resulting in ownership of the corporate real estate and other property by the bank and/or certain of its officers or directors." The petition also alleged that the actions of the bank officers and directors caused both Mr. and Mrs. Lott, the sole shareholders of L & L, to suffer health problems. L & L claimed damages of $2,000,000, and Mr. and Mrs. Lott claimed damages of $1,000,000 each.
The specific allegations of bank misconduct set forth in the petition were failing to promptly credit wire transfers from corresponding banks, failing to timely honor letters of credit, forcing L & L to seek substitute financing, not loaning L & L money needed to complete the purchase of a competing business on very favorable terms, and obtaining an assignment of L & L's accounts receivable from Leslie Lott, who was not authorized to execute the same.
Defendants filed an exception of no cause of action as to the claims of Leslie and Gail Lott, which was referred by the trial court to the merits.
We note that substantial portions of this record were made by proffer, after the proposed evidence was ruled inadmissible by the trial judge. Since appellants have not assigned as error these rulings by the trial judge, we do not address them, and the testimony in proffer is not before us. Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983).
Mr. and Mrs. Lott are the sole stockholders of L & L. The company was organized in 1982, and began manufacturing an outboard motor. It expanded to include the manufacture and sale of boat trailers and hot tubs. In 1983 or 1984 L & L began banking with Progressive National Bank. Reimer Calhoun, Jr., who owns 1/3 of Progressive's stock, has been Chairman of the Board at Progressive since before 1982. Reimer Calhoun, Sr., who also owns 1/3 of Progressive's stock, has been executive vice president of Progressive since March of 1985. Ron Boudreaux, President of Progressive, testified that when he first came to Progressive in March of 1985 L & L had one loan of over $100,000, which he felt was amply collateralized.
During the trial plaintiffs attempted to prove that Progressive failed to assist L & L in purchasing a competing business on very favorable terms, accepted an improper assignment of accounts receivable from L & L, failed to timely honor a letter of credit, did not promptly credit wire transfers from corresponding banks to L & L's account, and refused to loan L & L money. The Lotts also testified that Progressive had engaged in these activities in an attempt to force L & L to go bankrupt and suffer foreclosure proceedings. Ron Boudreaux denied each of these charges, and his testimony denying these allegations was corroborated by that of Reimer Calhoun, Sr. and Reimer Calhoun, Jr.
Both Mr. and Mrs. Lott testified that L & L's alleged problems with Progressive affected their health. Their doctor testified in each case that stress would be an aggravating factor in their respective illnesses.
At the conclusion of the trial the judge dismissed the suit as to Reimer Calhoun, *1158 Jr. and Reimer Calhoun, Sr.[1] After receiving briefs from both parties the trial judge entered a judgment sustaining the exception of no cause of action against the Lotts and rejecting the claims of L & L against Ron Boudreaux and Progressive.
Plaintiffs appeal assigning only three errors:
(1) The court erred in sustaining the Exception of No Cause of Action;
(2) The court erred in dismissing the claims against Reimer Calhoun, Sr. and Reimer Calhoun, Jr.
(3) The court erred in holding that the evidence failed to establish any negligence or wrong doing on the part of Progressive.
We find no merit in either of these assignments of error, and affirm.

ISSUE NO. 1
Plaintiffs' first error assigned is that the court erred in granting the exception of no cause of action. The exception was sustained on the ground that the Lotts had no cause of action individually for damages suffered as a result of alleged wrongs committed against the corporation. The Lotts argue that they were sueing for injuries sustained in their personal capacities, not as shareholders of L & L.
The peremptory exception of no cause of action is appropriately sustained only when, assuming the allegations of plaintiffs' petition to be true, plaintiff has not stated a claim for which he can be legally compensated under the applicable substantive law. C.C.P. art. 927; Frain as Tutrix of Beason v. State Farm Ins., 421 So.2d 1169 (La.App. 2d Cir.1982).
The Lotts' petition prayed for damages for mental anguish and physical suffering that resulted from the defendants' conduct. However, the wrongful acts alleged in plaintiffs' petition were all directed towards L & L, not Mr. and Mrs. Lott as individuals. A person cannot recover in tort for mental anguish resulting from injuries suffered by another. Jenkins v. Ouachita School Board, 459 So.2d 143 (La. App. 2d Cir.1984), writ denied 462 So.2d 652 (La.1985); Turner v. State of Louisiana, 494 So.2d 1292 (La.App. 2d Cir.1986). Further, if a corporation has sustained a loss then only that corporation can sue to recover it. A person who conducts business in corporate form and reaps the benefit of incorporation cannot sue individually for damages incurred by the corporation. Hinchman v. Oubre, 445 So.2d 1313 (La. App. 5th Cir.1984). Here, the only wrongful acts alleged were those against L & L. The Lotts cannot recover for mental anguish and attendant physical suffering resulting from any alleged wrongful acts against the corporation of which they are the shareholders and officers.
Further, the trial judge found that the plaintiffs had not proved any wrongful action, either intentional or negligent, practiced by the bank against L & L or anyone connected therewith. Based on the record, this factual finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, even if the exception of no cause of action had been improperly granted the evidence adduced at trial mandates the result that Leslie and Linda Lott's claims be rejected for lack of proof by a preponderance of the evidence of any wrongful actions on the part of the bank or its officers.

ISSUE NO. 2
Appellants' second assignment of error is that the court erred in dismissing plaintiffs' suit as to Reimer Calhoun, Sr. and Reimer Calhoun, Jr.
In a non-jury trial, the proper standard to be applied by the trial judge in ruling on a motion for dismissal is a preponderance of the evidence. The judge must weigh and evaluate all the evidence presented upon completion of the plaintiffs' case, and must grant dismissal if the plaintiff has not established proof by a preponderance of the evidence. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that *1159 the fact or cause sought to be proved is more probable than not. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3d Cir.1984); Caldwell v. Texas Industries, Inc., 419 So.2d 86 (La.App.2d Cir.1982), writ denied 423 So.2d 1149 (La.1982); Atkins v. Frazell, 470 So.2d 505 (La.App. 1st Cir.1985). The trial judge has much discretion in determining whether a motion for dismissal should be granted. Mott v. Babin Motors, Inc., supra.
Here, the plaintiffs' presentation essentially made no mention of the Calhouns. No plaintiff witness attributed any conduct they deemed inappropriate to either of the Calhouns. Careful review of the record reveals a complete absence of any evidence tending to show a wrongful action by either Reimer Calhoun Sr., or Reimer Calhoun, Jr.
We find the trial judge did not abuse his great discretion in granting the motion to dismiss the suit as to Reimer Calhoun, Sr. and Reimer Calhoun, Jr.
Appellants' second assignment of error has no merit.

ISSUE NO. 3
Appellants' final assignment of error is that the court erred in holding that the evidence failed to establish any negligence or wrongdoing on the part of Progressive in its financial dealings with L & L.
In brief, appellants argue only that the July 10, 1985 assignment of accounts receivable signed by Leslie Lott, L & L's vice-president, instead of by Linda Lott, the president, was invalid; and that Progressive's actions in notifying L & L's debtors of the assignment and advising the debtors to send payment directly to Progressive stifled L & L's cash flow.
On March 13, 1984, L & L executed a resolution authorizing Leslie Lott, as president, to borrow and mortgage on behalf of the corporation. Progressive had in its files a resolution which authorized the president of L & L to borrow money and sign notes for the corporation. On January 2, 1985, at a special meeting of L & L's Board of Directors, Linda Lott replaced Leslie Lott as president of L & L, and Leslie Lott was named vice-president of L & L. Apparently Progressive was furnished a copy of this resolution.
Shortly before July 10, 1985, L & L negotiated a loan from Progressive. An assignment of accounts receivable was to serve as collateral for this loan. On July 10, 1985, Ron Boudreaux went to L & L's offices, and had Leslie Lott sign the assignment. Linda Lott was out of town that day.
Plaintiffs argue that the assignment was invalid because it was not signed by the president of L & L as specified in L & L's resolutions.
The appellants' premise, that the assignment of accounts receivable was not valid, is unfounded. L & L's by-laws expressly give the vice-president the authority to act as president when the president is unavailable or incapacitated. The evidence shows that on the date the assignment of accounts receivable was signed Linda Lott was out of town and unavailable. Thus, under L & L's corporate by-laws Leslie Lott, the vice-president, was authorized to execute the assignment of accounts receivable.
However, assuming but not holding that the assignment signed by Leslie Lott was invalid, we must conclude that it was later ratified by the corporation.
The general rule is that contracts entered into or other transactions engaged in without authorization may be ratified either expressly or by implication by those having authority, provided the action was not prohibited by statute or the corporation's charter, and is not contrary to public policy. McCarty v. Panzico, 467 So.2d 1229 (La.App. 2d Cir.1985). Ratification occurs when personnel with the authority to bind the corporation acquire knowledge of the unauthorized act and thereafter fail to repudiate it within a reasonable time. This rule is particularly applicable when the delay in repudiation is a long one, the failure to repudiate is accompanied by acts indicating approval of the unauthorized act, or the circumstances call for a quick repudiation. McCarty v. Panzico, supra. A *1160 corporation cannot accept the benefits of an unauthorized contract and then deny its ratification. Hamm v. Southeast La. Emergency Med. Serv., 414 So.2d 835 (La. App. 4th Cir.1982); Campbell v. Pipe Technology Inc., 499 So.2d 111 (La.App. 1 Cir. 1986), writ denied 502 So.2d 117 (La.1987); Greenleaf Plantation, Inc. v. Kieffer, 403 So.2d 100 (La.App. 3d Cir.1981), writ denied 409 So.2d 675 (La.1981).
Although the president of L & L, Linda Lott, was aware of the assignment of accounts receivable, L & L made no complaint about the assignment of accounts receivable until the filing of this lawsuit. To the contrary, L & L accepted the loan proceeds collateralized by this assignment, and on several occasions the president of L & L, Linda Lott, provided the bank with lists of L & L's accounts receivable pursuant to this assignment.
In light of L & L's acceptance of the benefits received from the assignment, the officers' knowledge of the assignment and their failure to repudiate, and the president's action in providing the bank with information necessary for L & L to periodically receive the loan proceeds and effect the assignment of the accounts receivable, we conclude that the assignment was ratified by L & L.
With appellants' major premise repudiated, we can find no merit in their final assignment of error. The trial judge did not err in finding that plaintiffs established neither a scheme to bankrupt L & L nor any actionable negligence on the part of Progressive Bank or its officers in dealing with L & L or the Lotts.
The judgment of the court below is affirmed. Costs of this appeal are assessed to the appellants.
AFFIRMED.
NOTES
[1] At the close of plaintiffs' case defendants moved to dismiss the suit as to all defendants. In accord with C.C.P. art. 1672 the trial judge declined to render any judgment until the close of all the evidence.