Edwin E. GRAVES

v.

**CONCORDIA ELECTRIC COOPERATIVE, INC.**

**Civil Action No. 95–0638.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

June 4, 1996.

984

Charles C. Trascher, III, Jon Keith Guice, Snellings, Breard, Sartor, Inabnett and Trascher, Monroe, LA, for Edwin E. Graves.

V. Russell Purvis, Patrick L. Boothe, Smith, Taliaferro and Purvis, et al., Jonesville, LA, for Concordia Electric Cooperative, Inc.

Patrick L. Boothe, Smith, Taliaferro and Purvis et al., Jonesville, LA, for June Plunket, Bobby Ewing, Darrell Welch, Pete Phillips, Kenneth Ford, Norman Knudson.

## RULING

LITTLE, District Judge.

Defendant, Concordia Electric Cooperative, Inc., has filed a motion for summary judgment in the above captioned action pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff, Edwin E. Graves, has responded with an opposition and with a motion for summary judgment of his own. For the reasons that follow, both motions for summary judgment are DENIED.

## BACKGROUND

This lawsuit arises out of a contract dispute between Concordia Electric Cooperative, Inc. ("CEC"), an electrical cooperative organized as a special corporation under the provisions of La.Rev.Stat. § 12:401 *et seq.*, and Mr. Graves, a South Carolina resident whom CEC hired as its general manager in 1994.

CEC is organized essentially like any other corporation. The cooperative provides electricity to the rural residents of Concordia, Catahoula and LaSalle parishes. The residents of these parishes constitute the "members" of CEC. The members elect a board of directors. The board employs a general manager to manage the day-to-day operations of the cooperative.

■ Prior to February 1990, CEC was run by a nine member Board of Directors in accordance with Art. V, Section 1 of its Articles of Incorporation. La.Rev.Stat. § 12:409.A(1), however, allows the board of directors of an electrical cooperative to be composed of "not less than five directors" and further provides that "[t]he bylaws shall prescribe the number of directors." On 15 February 1990, the members of the cooperative approved a change in the CEC bylaws to reduce the number of directors from nine to five by a margin of 1,139 to 755 votes (approximately 60% to 40%). While this simple majority of the members voting was sufficient to amend the bylaws, it did not produce the two-thirds approval required by La.Rev. Stat. § 12:412(a)(1) to amend the articles of incorporation. The vote thus produced the anomalous situation in which the bylaws and articles of incorporation each specified a different number of directors. Given this conflict, the articles of incorporation arguably took precedence, as La.Rev.Stat. § 12:407 specifically provides:

The bylaws shall set forth the rights and duties of members and directors and may contain other provisions for the regulation of the affairs of the cooperative *not incon-*

*sistent with this part or with the articles of incorporation* (emphasis added).

Despite the fact that the articles of incorporation still technically required nine directors, CEC, nevertheless, began to operate under a five member board of directors. This five member board's numerous actions on behalf of the cooperative during this period—managers were hired, contracts were entered into, employees were paid—were not necessarily *ultra vires,* however, as the five sitting directors comprised a majority of the nine person board required by the articles of incorporation and, moreover, a majority of the board could constitute a quorum sufficient to transact business on behalf of the cooperative under Article 4, Section 5 of the bylaws and La.Rev.Stat. § 12:409(D). In other words, provided that all five sitting directors were present at any given meeting of the board, these five directors constituted a quorum and possessed the authority to transact CEC's business.

The particular drama that led to the filing of this lawsuit occurred in the spring of 1994. On 1 March, the board held a meeting at which only four directors were present. At this meeting, three directors voted in favor of, and one director voted against, entering into an employment contract with plaintiff Edwin Graves. Graves would be hired as general manager of CEC for a two year term. Pursuant to this vote, on 7 March, Ann Barron, one of the three directors who had voted in favor of the contract, executed the "Contract for Employment as General Manager," which forms the basis of the plaintiff's claims in this suit. Importantly, on 15 March 1994, another meeting of the board was held at which *all five* directors were present. At this meeting, the plaintiff contends, the board ratified Mr. Graves' contract. Mr. Graves started to work immediately upon the execution of his contract.

Approximately two months later, on Saturday, 7 May 1994, at the annual meeting of the CEC membership, four members of the board of directors that had hired Mr. Graves (and/or ratified his contract) failed to win reelection, and four new directors were elected to replace them. Two days later, the new board of directors reconvened and voted to suspend Mr. Graves with pay. On 2 June 1994, Mr. Graves' employment with CEC was terminated. This lawsuit then ensued.

Mr. Graves' amended complaint names as defendants CEC and the five directors serving on the CEC board at the time of his termination.[1] Plaintiff seeks damages in an amount equal to the losses he sustained as a result of the defendant's alleged breach of his written employment contract, as well as general damages sustained as a result of the individual defendant's actions.

CEC has moved for summary judgment on the ground that the board that voted to hire Mr. Graves on 1 March 1994 was only comprised of four directors and thus did not constitute a quorum authorized to transact business. Because these four directors' vote to enter into a contract was *ultra vires,* CEC contends, plaintiff is, therefore, not entitled to enforce the terms of the contract.

Plaintiff counters with two arguments. First, plaintiff claims, relying primarily on La.Rev.Stat. § 12:409, that the membership's vote to amend the bylaws in February 1990 did effectively change the number of directors to five, even though the articles of incorporation's requirement of nine directors remained unchanged. More convincingly, plaintiff contends, assuming arguendo that a nine director board was still required, that a quorum of five directors was present for the ratification of Mr. Graves' contract and, therefore, his contract is enforceable.

## LAW AND ANALYSIS

As our preceding recital of the facts makes clear, this case presents a unique situation in which the articles of incorporation and the bylaws of a special corporation authorized by Louisiana law each provides for a different number of directors to sit on the entity's board. Furthermore, as the articulate briefs of CEC and plaintiff reveal, two sections of

1. Plaintiff, a resident and domiciliary of Berkely County, South Carolina, invoked the jurisdiction of this court pursuant to 28 U.S.C. § 1332. CEC is a Louisiana corporation, domiciled in this state, whose principal place of business is located in Catahoula Parish. The individual defendants are all Louisiana residents and domiciliaries.

the Louisiana Revised Statutes governing electrical cooperatives appear to be in conflict in this case. On one hand, La.Rev.Stat. § 409 provides the clear, non-discretionary directive that the "bylaws shall prescribe the number of directors." On the other hand, La.Rev.Stat. § 407 states the basic corporate law principle that given a conflict between the articles of incorporation and the bylaws, the former take precedence over the latter. We need not resolve this interpretive dilemma, however, because we find, assuming a nine person board was still required in order for CEC to take corporate actions, that the five directors who constituted a quorum on 15 March affirmatively ratified Mr. Graves' contract and that the newly elected five person board also implicitly ratified the contract.

 It is a basic principle of Louisiana corporate and agency law that "contracts entered into or other transactions engaged in without authorization may be ratified either expressly or by implication by those having authority, provided the action was not prohibited by statute or the corporation's charter, and is not contrary to public policy." *L & L Industries v. Progressive National Bank*, 535 So.2d 1156, 1159 (La.Ct.App. 2nd Cir.1988); *see also Kemna v. Warren*, 514 So.2d 237, 238–39 (La.Ct.App. 5th Cir.1987); *McCarty v. Panzico*, 467 So.2d 1229, 1234 (La.Ct.App. 2nd Cir.1985). Implicit "[r]ratification occurs when personnel with the authority to bind the corporation acquire knowledge of the unauthorized act and thereafter fail to repudiate it within a reasonable time. This rule is particularly applicable when the delay in repudiation is a long one, the failure to repudiate is accompanied by acts indicating approval of the unauthorized act, or the circumstances call for a quick repudiation." *L & L Industries*, 535 So.2d at 1159; *see also McCarty*, 467 So.2d at 1234. One example of an act indicating approval of an unauthorized act is when the corporation receives or retains benefits accrued from the unauthorized act. *Id.*

 In the instant case, we are persuaded that the CEC board both expressly and implicitly ratified Mr. Graves' contract on several occasions. The express ratification occurred at the 15 March meeting of the CEC board. The minutes of that meeting clearly reflect that all five directors were present, that director Barron asked the board to ratify an addition to Mr. Graves' manager contract,[2] and that a motion to ratify the contract as amended was offered by director Burley, seconded by director Mount and carried by a three to two vote. The fact that Mr. Graves immediately went to work after the execution of this contract and that the cooperative received the benefit of his services for two months thereafter further supports our conclusion that CEC had ratified his contract.

 Just as important, several other facts persuade us that the newly elected board also failed to repudiate Mr. Graves' contract and thus implicitly ratified it. First, we note that the limited written notice given by the newly elected board to Mr. Graves on 10 May informing him of his suspension and possible firing specifically mentioned only that a hearing will be held to determine whether he had violated specific provisions of his contract and not that the contract's validity itself was in doubt. Next, at the 2 June special meeting at which the new board voted to terminate Mr. Graves, the board specifically withdrew as a reason for this action the allegation that the board was illegally constituted at the time Mr. Graves was hired and his contract was executed. Finally, we note that at least one board member has testified in deposition that CEC attempted to comply with Mr. Graves' contract in securing his termination.

Given all these facts, it is clear not only that the old five member board actually ratified Mr. Graves' contract on 15 March 1994 but that the new board later sought to terminate his employment pursuant to that contract. In short, there is no escaping the conclusion that CEC effectively ratified Mr. Graves' contract.

---

**2.** Barron specifically asked the board to ratify the addition "of the words of Paragraph 3 on Page 4 (underlined in the following), 'Edwin E. Graves will receive the same benefits paid and provided by the Cooperative to the same extent that regular employees enjoy, including but not limiting....'"

Having found that a valid contract existed between CEC and plaintiff, we must, therefore, deny CEC's motion for summary judgment. Our determination that a valid contract existed between the parties, however, does not mean that CEC's termination of Mr. Graves pursuant to that contract was necessarily unlawful. Neither party has presented sufficient facts or legal arguments on this issue to justify summary judgment. Accordingly, both CEC and plaintiff's motion for summary judgment are hereby DENIED.