252 So.2d 919 (1971)
WALTERS AIR CONDITIONING COMPANY, Inc., Plaintiff-Appellee,
v.
FIREMEN'S FUND INSURANCE COMPANY, Defendant-Appellant.
No. 11652.
Court of Appeal of Louisiana, Second Circuit.
September 8, 1971.
Rehearing Denied October 12, 1971.
Snellings, Breard, Sartor & Shafto, by George M. Snellings, III, Monroe and John S. C. Massey, West, Monroe, for defendant-appellant.
Carl F. Walker, Monroe, for plaintiff-appellee.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied October 12, 1971.
BOLIN, Judge.
Walters Air Conditioning Company, Inc. instituted suit against defendant, Firemen's Fund Insurance Company, surety for Pruitt Sheet Metal Works, Inc., for $5,843.95, representing the difference between the original subcontract price with Pruitt and the total sums expended by plaintiff to complete the subcontract for ductwork. Pruitt completed approximately one-half of *920 the subcontract and then defaulted. It became necessary for Walters to employ another sheet metal company to complete the air-conditioning job originally contracted. In addition, Walters seeks reimbursement of $480 for attorney's fees expended by it for legal services in a prior injunction proceeding instituted to compel Pruitt to discontinue the work with non-union labor in violation of the contract.
The lower court rendered judgment in favor of plaintiff and against Firemen's Fund for $1,262.30, and in favor of Firemen's Fund for a like amount against third party defendant, Pruitt Sheet Metal Works, Inc. Defendant appeals and plaintiff answers the appeal seeking an increase in the award to the amount originally demanded. Pruitt has not appealed.
The essential facts are not in dispute. This is an action against a surety because of non-performance on the part of the subcontractor for whom defendant, Firemen's Fund Insurance Company, was surety on its performance bond. The subcontract was one for installation of ductwork regulators, grills, and other sheet metal work necessary for the air-conditioning system in a new addition to St. Paul's Methodist Church in the City of Monroe, Louisiana. The subcontract and the bond were in the amount of $8,800. The contract in question contained the following clause or provision, the terms of which lead to the original dispute and subsequent non-performance:
"General Contractor uses men that are affiliated with the Building & Construction Trades Council of Monroe, and Sub-Contractor agrees to use men from this organization on all work at site." (Emphasis added)
At the time the subcontract was entered into, and at the time it commenced its undertaking, Pruitt's employees were in fact affiliated with the Building & Construction Trades Council of Monroe, as required by the quoted clause. Following completion of part of the work, Pruitt's agreement with the named union expired and arrangements were made with a different union to use and employ persons not affiliated with the Building & Construction Trades Council. This action resulted in pickets being placed on the job site and, since other union-affiliated trades refused to cross the picket lines, the entire job was brought to a standstill.
Walters Air Conditioning Company, Inc. obtained a temporary restraining order to prevent Pruitt from making further use of employees not affiliated with the Building & Construction Trades Council of Monroe on this job site. That proceeding before the district court ultimately resulted in the issuance of a permanent injunction against Pruitt as to further use of employees not affiliated as prescribed above. Pruitt filed an answer and reconventional demand in the injunction suit alleging that prior to the injunction it had performed a portion of the contract work amounting to $6,600, for which it had been only partially paid, and sought recovery of the balance allegedly due, although it had not completed the contract. The answer of Walters to the reconventional demand denied the demand and alleged Pruitt had been paid all that it was due for ductwork already installed in the church. Trial was had on the reconventional demand, and judgment was rendered in favor of Pruitt. No issue of breach of contract by Pruitt was raised, nor was Pruitt's bonding company made a party, nor did Walters plead any offset or damages, or other rights relating to completion of the contract. The judge in that suit found Pruitt was entitled to payment for all work done at his shop, as well as that performed at the job site, thus concluding Pruitt had completed 70% of the contract by the time he was enjoined. There was no appeal from this judgment which was ultimately paid by Walters.
Plaintiff contends on this appeal it notified Firemen's that Pruitt had defaulted on its subcontract, and that the surety replied by letter that it did not wish to exercise its *921 right to continue completion of Pruitt's contract. This letter, it is alleged, also advised plaintiff either to continue completion of the contract itself, or to secure another contractor to complete the work. Thus plaintiff alleges its right to recover from the surety all expenses caused by the default of Pruitt, including the cost of obtaining another subcontract with Covington to complete the unfinished air-conditioning ductwork. Defendant-appellant asserts the trial judge committed errors in each of the following respects:
"In failing to recognize that because of the judgment in the injunction and reconventional demand for payment for work performed there was a judicial determination that 70% of the Pruitt subcontract had been performed, and in failing to hold that the most that Walters could claim against the surety would be the reasonable cost of completing 30% of the original contract;
"In failing to apply the doctrine of `collateral estoppel';
"In allowing the claim of $480.00 for attorney's fees expended by Walters in the original proceeding and
"In failing to reject all demands of plaintiff-appellee, Walters, at its cost."
The trial judge's excellent written reasons for judgment contain, we believe, a very concise resume of the facts as well as a correct statement of the law except as it relates to attorney's fees.
With regard to the earlier suit on the reconventional demand of Pruitt, he found that no issue of breach of contract was raised, nor was Pruitt's bonding company made a party, nor did Walters plead any offset or damages or other rights relating to the contract. He concluded Walters paid funds "dedicated" to the performance of the contract, after Pruitt's default, in the total amount of $4,416.00; that the litigation with Pruitt was conducted and the judgment of $3,019.20 was paid long after the surety had advised plaintiff in writing it objected to any payments and considered itself prejudiced thereby. We have reviewed the correspondence between Walters and Firemen's Fund and find it supports this finding. While we are cognizant of the hardship which this finding imposed upon plaintiff, since under its contract progress payments were to be made at regular intervals and payment of the judgment could not be said to be voluntary, nevertheless, these payments without the prior consent of the surety, and without making the surety a party to the suit, did prejudice the latter's ability to protect itself. It was admitted by Pruitt at the time of trial his corporation was insolvent, and was not even in business at that time.
Louisiana Civil Code Article 3061 provides:
"The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety."
Actions which may prejudice the surety include anticipated payments made by the owner (contractor or creditor) "to the extent that the surety is damaged by such * * * anticipated payments". (La.R.S. 9:4806)
In a situation comparable to that here presented the court, in Southern Builders' Material Company v. Foto (Orl.1929), 11 La.App. 255, 122 So. 914, held, as to the surety:
"The contract required that no payments should be made until the work was approved and accepted by the chief engineer of the owner. The record teems with evidence to the effect that payments were made by plaintiff without the requirement of such approval. * * *
* * * * * *
"It is conceded that the surety did not know of or consent to these anticipated payments.

*922 * * * * * *
"The surety has the right to stand on the terms of his contract. The creditor cannot make any change, though beneficial to the surety, under the penalty of releasing him." McGuire v. Wooldridge, 6 Rob. 47.
As stated in Basso v. Export Warrant Company, 194 La. 303, 193 So. 654 (1940), the court, after reviewing the earlier cases, summarized the results:
"The holding in these cases is, in effect, that a surety has a right to stand upon the terms of his contract and that if the creditor intends to look to the surety for payment, he is compelled to preserve unimpaired all of his rights against the debtor."
To the same effect are the decisions in Talbert v. Bounds & Allen (La.App. 2 Cir. 1960), 123 So.2d 815, and Crescent City Construction Corporation v. Monteleone (La.App. 4 Cir. 1968), 209 So.2d 311. In the latter case the court pointed out that although the surety is entitled to no affirmative relief, it is entitled to a defense to the extent the owner's claim was asserted against it, citing La.R.S. 9:4806.
For the reasons outlined above we conclude the lower court correctly recognized the defense to the extent of $4,416. As to whether plaintiff's additional expenditures were properly chargeable to completion of the contract, we find from the record that the surety refused to complete the contract after notification of default by its principal, and Walters had a right and duty to obtain completion of the air-conditioning work under its contract with Lincoln Builders. Covington Sheet Metal Company was the only company which would undertake the completion, and the cost of this contract was admittedly $7,862.30. Added to the $1,800 previous payment to Pruitt, which payment was made in conformance with the contract and before default, we find the final cost to Walters was $9,662.30. Subtracting therefrom the original contract price of $8,800 leaves a net loss to Walters of $782.30, for which the surety is liable. The trial court awarded appellee Walters $480 for attorney's fees allegedly expended during the injunction proceeding.
Although considerable controversy continues to revolve around the question of the award of attorney's fees, the general rule has been reiterated many times, i.e. in the absence of statutory or contractual authority [neither of which is present in the instant case] attorney's fees should not be awarded as an item of damages. See Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958), and Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970), particularly the dissenting opinion of Justice Barham in the latter case.
The judgment of the lower court is amended to delete therefrom the amount of $480 and, as amended, it is affirmed. Appellee is cast for cost of this appeal.