292 So.2d 284 (1974)
MASTER MAINTENANCE ENGINEERING, INC.
v.
Mr. and Mrs. Garland McMANUS.
No. 9705.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
*285 Paul Marks, Jr., Baton Rouge, for appellant.
Warren L. Mengis, Baton Rouge, for appellee.
Before SARTAIN and TUCKER,[*] JJ., and WATSON, J. ad hoc.
*286 WATSON, Judge ad hoc.
This suit was filed by plaintiff to recover sums allegedly due from defendant under the terms of a "Builder's Contract", together with damages claimed for defendant's breach of the contract. Mr. and Mrs. Garland McManus were originally named as defendants, but Mrs. McManus was dismissed from the suit on an exception of no cause of action since she was not a party to the contract. Defendant filed a reconventional demand alleging breach of the contract by the plaintiff contractor.
The builder's contract, executed on February 16, 1972, provided that the contractor, Master Maintenance Engineering, Inc., would build a residence for the owner, Garland McManus, on a lot in West Sherwood Forest, East Baton Rouge Parish, Louisiana. Under the terms of the contract, work was to commence on February 21, 1972 and be finished by June 21 of that year. The contract provided "said work to be done under the personal supervision and to the satisfaction of the Owner, the Owner's architect, or other authorized agent." Payment was to be made in four installments of $11,205 each. An additional payment of $4,980 was to be made 30 days after completion of the work. Liquidated damages of $5 per day were provided for each day that the work remained unfinished.
Mr. and Mrs. McManus were unhappy with the work performed by plaintiff and did not pay the fourth and final installments on the contract. In November of 1972 they undertook completion of the house, filing a notice of default against their contractor on November 13.
On trial of the matter, the testimony was conflicting. The trial court concluded after a careful review of the evidence that any deficiencies in the construction were not such as to prevent the house being put to the use for which it was intended. However, the trial court found that the contractor had had ample time to correct defects in the residence, did not do so, and that the owner was therefore justified in completing his home. The trial court also found that the contractor was entitled to payment for certain "extras" on the principal demand. Judgment was given for plaintiff as follows:

"Fourth payment $11,205.00
 Final payment 4,980.00
 __________
 Balance due under contract $16,185.00
 Less cost of repairing defects 2,515.00
 __________
 Sum due for substantial performance $13,670.00
 Extras allowed $6,133.88
 Credits 1,138.64
 _________
 Balance of extras in excess of credits 4,995.24
 ___________
 Balance due plaintiff against defendant on
 principal demand $18,665.24"
 (TR. 35)

Defendant was given judgment on his reconventional demand. The trial court found that the contractor had breached the contract by a delay of nearly five months in completing the job. The owner, Mr. McManus, was awarded rent for four months at $85 per month or $360 and the amount of his interim financing for four months or $601.90. The total award to defendant and plaintiff-in-reconvention, Garland McManus, being $961.90. Defendant's expert witness, Arthur F. Deceasre, was awarded a fee of $500, taxed as costs. All costs were divided between the parties.
*287 The plaintiff contractor has appealed, alleging that the trial court erred:
(1) in failing to hold that the contractor had completed the construction in accordance with the contract;
(2) in holding that the work was defective and that repairs were necessary by the owner;
(3) in failing to allow the extra charge for water closets;
(4) in allowing damages to the owner under his reconventional demand;
(5) in awarding an expert witness fee to Deceasre and in dividing the costs between the parties.
The defendant homeowner has also appealed and has answered plaintiff's appeal, contending that his award should be increased from $961.90 to $18,706.56. He has also filed an exception of no right of action, contending that plaintiff, Master Maintenance Engineering, Inc., is not entitled to the "extras", awarded by the trial court. This exception is based on the fact that the plaintiff contractor did not in fact do any of the construction on the house. The entire job was subcontracted to the firm of Lanier and Stockman Builders, Inc. and any agreement as to "extras" was made between Mrs. McManus and the subcontractor. However, Mr. McManus admitted in paragraph 10 of his answer to plaintiff's petition that he had contracted for extra work and materials to the sum of $1,548.54. LSA-C.C. art. 2763 provides as follows:
"When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner."
We feel that it is immaterial whether or not the owner agreed with the contractor or the subcontractor in regard to these extras. The subcontractor was acting as an agent of the contractor, and defendant McManus is bound by an agreement made by him or on his behalf with the subcontractor. The only question is whether or not the contractor carried its burden of proving that defendant authorized the extra work and extra material; that they were furnished and their value. LSA-C.C. art. 2764; Groner v. Cavender, 133 So. 825 (La.App. 2 Cir. 1931); Gulotta v. Swinney, 143 So.2d 775 (La.App. 1 Cir. 1962). We feel that the trial court was correct in its detailed findings as to the "extras" authorized by Mr. and Mrs. McManus and furnished by the contractor and the amounts awarded for them.
Plaintiff contends that the acceptance of the house by Warren T. Bridges, an architect employed by Capitol Building and Loan Association, was binding on defendant McManus under the terms of the builder's contract quoted hereinabove, Mr. Bridges being the "Owner's architect or other authorized agent." However, page 2 of the Builder's Contract contains the following language:
"The fourth payment of Eleven thousand two hundred five and no/100 ($11,205.00) [shall be paid] when house is completed, accepted by owner and approved by Warren T. Bridges and acceptance filed of Record. The last and final payment of Four thousand nine hundred eighty and no/100 ($4,980.00) Dollars shall be made thirty days after the entire work shall have been completed, and accepted by the said Owner, . . ."
It is clear that Mr. Bridges did not serve as Mr. McManus' architect in the general sense of that term. Mr. Bridges inspected the house on behalf of his employer, which was providing the financing, and not on behalf of Mr. McManus. The language quoted above makes it clear that the work *288 had to be accepted both by Mr. McManus and Mr. Bridges. Mr. McManus not only did not accept the work performed by plaintiff but in fact filed a "notice of default" as to plaintiff's performance.
The trial court concluded that the contractor did not establish that the house was completed according to the contract when Mr. McManus refused to accept it. We agree. Mr. Arthur F. Deceasre, a civil engineer, qualified as an expert in the construction and design of residences, testified that the house was not complete as of his inspection on November 4 or 5; that the painting was substandard; that the brick work was substandard; that the foundation was not good; that there was a tripping hazard because of a badly laid slate floor in the den; that the electrical system was faulty; and other items needed attention. Mr. Billy Devall, a house painter for fifteen years, testified that the paint job in the house was below standard and very poor, and that he would not have accepted it. Mr. Benny F. Mistretta, an electrical contractor for twenty-five years, qualified as an expert in electrical work, testified that the faulty electrical work in the house created a dangerous condition and made the house unusable. Mr. Herman Thomas Eddleman, a contractor qualified as an expert in carpentry and house building, testified that the brick work was bad; that the slate floor in the foyer was laid with uneven joints; that the beam over the door between the foyer and the family room was not level and that this was visible to the naked eye; that crooked walls and an unlevel floor kept the sliding door to the patio from opening; that there was a bad paint job; and that the house was unacceptable. Mr. Gary B. Wall, a painter, testified that the work in the house was worse than average and that he would not have accepted it. Mr. Walter D. Covington, a carpenter for fifteen years, testified that the work in the house was not good and that he remedied numerous deficiencies. Mr. Emmett C. Gill, a neighbor, testified that he would not have accepted the house, and Mr. and Mrs. McManus, of course, testified about their problems with the house. The trial court allowed Mr. McManus a credit of $2,515 for the cost of repairing these defects, which we find amply supported by the evidence. Many of the other problems with the house appear to have resulted from the inadequate plans furnished the contractor by Mr. and Mrs. McManus, and they are not entitled to recover for these items. LeBreton v. Brown, La., 277 So.2d 645 (1973); LSA-R.S. 9:2771.
Louisiana law provides that when a contractor has substantially performed a building contract, which he has breached, he is entitled to recover the contract price, less whatever damages the owner may prove attributable to the breach. LSA-C. C. art. 2769. When he has not substantially performed, the contractor is limited to recovery on quantum meruit. Whether or not there has been a substantial performance so as to permit recovery on the contract is a question of fact, determined primarily by whether or not the construction can be put to the use for which it was originally intended. The trial court decided that there had been substantial performance by plaintiff herein. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961). There is certainly sufficient evidence to support that conclusion. Mr. Bridges, an expert in the field of architectural engineering, testified that he made an extremely close inspection of the house when he accepted it on November 7, 1962 and that the workmanship was far superior to the minimum acceptable in the community. Mr. Norman Anthony Deumite, the contractor, testified that he offered to buy the house from Mr. McManus for the money he had in it. Mr. McManus confirmed that this offer was made. Mr. Karem J. Thomas, a civil engineer, testified that the house was structurally well built. Woodzay Vining, a house builder and carpenter, testified that the house "looked real good"; "was a beautiful job"; "there was quite a bit extra put into the *289 thing"; "the house was in outstanding condition". (TR. 691) Robert L. Norton, a witness in the construction business, testified that the house had good workmanship and was ready to move into. Mr. Wayne Bunch, a contractor in Baton Rouge, testified that he looked at the house in September or October and that the workmanship in the house compared favorably with anything in the Baton Rouge area. Even defendant's expert witness, Arthur F. Deceasre, a civil engineer, qualified as an expert in the construction and design of residences, testified that the house was substantially complete when he inspected it for Mr. McManus on November 4 or 5.
As to the defendant's reconventional demand, we quote from the opinion of the trial court as follows:
". . . it is determined that the Contractor has breached his contract and the owner is entitled to damages for the breach. The major provable claims for the breach of the contract are based on the delay occasioned the owner by the Contractor in failing to complete the contract on time. While admittedly, there was some minor delay caused by Mrs. McManus' uncertainty in regard to the installation of the cabinets, nevertheless, the unusual delay by the Contractor to the extent of nearly five months in completing the job is inexcusable. It appears that the main reason for this delay, as well as for some of the poor workmanship in the job, was a lack of proper supervision. The evidence reflects that Mr. McManus paid rent in the amount of $85.00 per month. The Court determines that the owner was unreasonably delayed four months in obtaining occupancy of the residence by the action of the Contractor and accordingly, McManus is entitled to reimbursement for rent in the amount of $360.00. Further, because of this delay, the Court awards McManus the sum of $601.90, being equal to the interim financing for four months after June 22, 1972. Finally, the Court is of the opinion that McManus is not entitled to attorney fees for the breach of the contract because generally, in the absence of statutory or contractual authority, attorney fees should not be awarded as an item of damages. Walter Air Conditioning Co. v. Fireman's Fund Ins. Co., 252 So.2d 919 (2nd Cir. 1971)."
The awarding of an expert witness fee to Mr. Arthur F. Deceasre was within the discretion of the trial court, as was the division of the costs between the parties. As to the latter item, we feel that the conflict in testimony makes this the only equitable solution.
The judgment of the trial court is affirmed and all costs of this appeal are assessed equally between the plaintiff and defendant-in-reconvention and defendant and plaintiff-in-reconvention.
Affirmed.
NOTES
[*] Tucker, J., died on the 25th day of January, 1974.