426 So.2d 631 (1982)
Don SPIERS d/b/a Don Spiers Realty
v.
Edward SEAL and Clyde Seal.
Patrinia M. SCIANNA and John Scianna
v.
Clyde SEAL, Edward Seal and Seal Lumber Company.
Nos. 82 CA 0146, 82 CA 0147.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied February 17, 1983.
Writs Denied April 15, 1983.
*632 John N. Gallaspy, Bogalusa, for plaintiffs.
M. Reggie Simmons, Franklinton, for defendants.
Before EDWARDS, WATKINS and SHORTESS, JJ.
WATKINS, Judge.
These are two cases which were consolidated for trial and are now consolidated for purposes of appeal.
We will discuss only the demands that are the subject of the present appeal. In No. 82 CA 0147 Patrinia M. Scianna and her major son, John S. Scianna, brought suit for specific performance of a contract to sell allegedly entered into by Seal Lumber Company, Inc., damages from Seal Lumber Company, failure of Seal Lumber Company to comply with the alleged contract to sell, or alternatively, damages from Edward Seal and Clyde Seal for failure to comply with the alleged contract, and attorney's fees from the parties cast in judgment. In No. 82 CA 0146, Don Spiers, d/b/a Don Spiers Realty, seeks a commission of $3,000.00 from Edward Seal and Clyde Seal for work in obtaining an alleged contract to sell which the Seals allegedly failed to perfect into an actual sale. The trial court awarded $3,000.00 commission in favor of Don Spiers Realty but denied the Sciannas' *633 demands for specific performance, damages and attorney's fees. In No. 82 CA 0147 the Sciannas appealed, and in No. 82 CA 0147 Edward and Clyde Seal appealed. We affirm the action of the trial court in awarding a commission in the sum of $3,000.00 in favor of Don Spiers Realty, but also hold that the Sciannas are entitled to specific performance.
Seal Lumber Company, Inc., was founded by the father of the brothers Edward and Clyde Seal. Upon their father's death, Edward and Clyde Seal became sole shareholders, directors and officers of Seal Lumber Company, Inc., and at all times pertinent to the case they were sole stockholders, directors and officers of Seal Lumber Company, Inc., with Edward Seal as president and Clyde Seal as secretary and treasurer.
It has been stipulated that all of the instruments given below which were introduced at the trial as exhibits dealt with the same property, although under different descriptions. Suffice it for present purposes to say that the property in question was owned by Seal Lumber Company, Inc., and consisted of approximately 26 acres on South Columbia Street near Bogalusa, Louisiana.
The five exhibits which are pertinent to our discussion are as follows:
Stipulated Exhibit # 1. Listing agreement dated January 18, 1978, listing the said property with Georgia Spiers of Spiers Realty over the signature of Clyde Seal on the line provided for "Owner's Signature". The total requested sales price is given as $44,600.00 and a 10% realtor's commission is provided for.
Stipulated Exhibit # 2. Letter signed by Edward Seal, under which signature is typed "Edward W. Seal, Pres., Seal Lumber Co., Inc.", dated March 22, 1979, addressed to Don Spiers Realty Co., offering the whole property for sale for a price of $60,000.00, or fractional portions thereof for lesser sums. The letterhead reads "Seal Lumber Company, Inc., Lumber-Paints Building Materials, Bogalusa, Louisiana 76427". The offer states it is to remain in effect for six months from date of the letter.
Stipulated Exhibit # 3. Listing agreement dated March 22, 1979, listing property with "Georgia" of Don Spiers Realty, over the signature of Edward Seal on the line provided for "Owner's Signature". The total requested sales price is given as $60,000.00 and a 10% realtor's commission is provided for.
Stipulated Exhibit # 4. Instrument captioned "Agreement to Purchase" dated "3/23, 1979" beginning on line one with the words "I/We offer and agree to purchase" followed by a description of the property in question. A realtor's commission of 5% is provided for. The instrument recites that the "offer" is to remain open until "3/25/79" and is signed by Patrinia M. Scianna and John S. Scianna. Below the Sciannas' signatures is a line stating "I/We accept the above in all its conditions" followed by the signatures of Clyde Seal and Edward Seal. Opposite the signatures is written "3/27, 1979".
Stipulated Exhibit # 5. Letter from John N. Gallaspy, attorney for Patrinia M. Scianna and John S. Scianna, dated April 24, 1979, addressed to Edward Seal and Clyde Seal stating that pursuant to the Purchase Agreement (Stipulated Exhibit # 4) his clients are prepared to accept title to the property on either April 26, 1979, at 11:00 a.m. or April 28, 1979, at 11:00 a.m. at Mr. Gallaspy's office in Bogalusa.
The record reveals that the Seals never appeared to transfer title to the property in question. Clyde Seal's testimony is that they decided not to transfer title to the Sciannas because: "We just decided it was kind of a bad deal...."
However, we find that by this time by virtue of Stipulated Exhibits # 's 2, 3, and 4, a binding contract had been perfected between Patrinia M. Scianna and John C. Scianna on the one hand and Seal Lumber Company, Inc., on the other hand, which constituted a contract to sell, and required that Seal Lumber Company, Inc., proceed with a transfer of title to the Sciannas. The corporate officers of Seal Lumber Company, *634 Inc. were not free to change their minds because of the binding nature of the contract.
Stipulated Exhibits # 's 2, 3, and 4 were the product of negotiations between Seal Lumber Company, Inc., and the Sciannas in which Don Spiers Realty acted as an intermediary. Stipulated Exhibit # 's 2 and 3 were clearly intended, the record reveals, to be an offer to the world in general, and the Sciannas in particular, to sell the property in question for $60,000.00 with a 10% realtor's commission. The offer was made on behalf of Seal Lumber Company, Inc. as Edward Seal signed Stipulated Exhibit # 2 as President of Seal Lumber Company, Inc., under the letterhead of Seal Lumber Company, Inc.
Stipulated Exhibit # 4, styled "Agreement to Purchase", clearly constitutes an acceptance by the Sciannas of the offer made by Seal Lumber Company, Inc. to sell the property for $60,000.00. The Agreement to Purchase begins "I/We offer and agree to purchase ..." the property in question. The purchase price is given as $60,000.00. The instrument is signed by Patrinia M. Scianna and John S. Scianna. The execution of the instrument by the Sciannas embodies an acceptance by virtue of the very terms of the instrument itself ((W)e ... agree to purchase....") of the offer made by Seal Lumber Company, Inc. to sell the property for $60,000.00.
However, even if we construe the instrument to constitute on its face an offer to purchase for $60,000.00, rather than an acceptance of an offer to sell at that price, we see that the instrument must be legally construed as an acceptance. An offer to sell at a certain price followed by an offer to buy at a price more favorable to the seller, causes a contract to be completed at the seller's price, under the provisions of LSA-C.C. art. 1807, which reads as follows:
"When, however, from the circumstances of the case, the offer necessarily implies an assent to the modification of the acceptance, then the obligation is complete, although there be a difference in terms between the one and the other. If, for example, one offers to sell a certain article for one hundred dollars, and the other, not having yet received the offer, should on his part propose to give two hundred dollars, the proposal to give the greater sum necessarily implies an assent to take it for a less, and the contract is complete at the lowest sum."
If an offer of the buyer to purchase at a higher price than the price set by the seller in his offer to sell completes a contract (at the seller's price), then also an offer to purchase at the same price as that set by the seller in his offer to sell completes a contract. Even when cross offers are made on the same terms, so that there is no knowledge on the part of the parties making the original offers of the offer of the other party, under the Civilian tradition which Louisiana follows in this aspect of the law, there is a contract, because (1) there is a concurrence of wills and (2) the law favors the formation of contracts. See Litvinoff, Offer and Acceptance in Louisiana Law: A Comparative Analysis: Part IIAcceptance, 28 La.L.Rev. 153, 201 (1968). In the present case, applying this analysis we see that there was a mutually expressed concurrence of wills on the part of Seal Lumber Company and the Sciannas, that the property be sold by Seal Lumber Company and purchased by the Sciannas for the sum of $60,000.00.
We construe the Sciannas' "Agreement to Purchase" as constituting an acceptance of the offer contained in Seal Lumber Company's letter to sell for $60,000.00. Furthermore, under LSA-C.C. art. 1807, even if the "Agreement to Purchase" constitutes an offer, it conforms to the price set by the offer made by Seal Lumber Company, Inc. and thus a binding contract was formed.
The offer made in Stipulated Exhibit # 2 signed by Edward Seal as the designated President of Seal Lumber Company, Inc. was not supported by any resolution of the board of directors of Seal Lumber Company, Inc., written or verbal. As a general rule, a mandate authorizing an agent (officer) to buy or sell immovable *635 property must be express and in writing. LSA-C.C. art. 2997; Centanni v. A.K. Roy, Inc., 258 So.2d 219 (La.App. 4th Cir.1972); Tchoupitoulas, Inc. v. McCullough, 349 So.2d 346 (La.App. 4th Cir.1977), writ refused 351 So.2d 166 (1977). However, if a corporation is seeking to avoid an instrument conveying immovables confected by an agent (officer) clothed with the apparent authority to bind the corporation executing that instrument, and an innocent purchaser relies upon that apparent authority, the corporation is bound by the conveyance for the reason that the innocent purchaser cannot be permitted to be misled by a corporate officer that the corporation permits to hold himself out as acting with full authority. See Ideal Savings & Homestead Ass'n. v. Kerner, 208 La. 513, 23 So.2d 200 (1945). The apparent authority doctrine is obviously an exception to the general rule requiring that there must be an express written resolution of the board of directors authorizing the corporate officer to execute an instrument buying or selling immovables. In the present case, Edward Seal did not act under the express authority of a written resolution of the board of directors of Seal Lumber Company, Inc. However, he was clothed with the apparent authority to make an offer to sell the tract in question for the reason that he used the Seal Lumber Company, Inc. letterhead in that offer, and signed the letter in his apparent authority as corporate president. Furthermore, the sole two shareholders, Edward Seal and Clyde Seal, verbally held themselves out throughout the negotiations with Spiers Realty and indirectly the Sciannas as making an offer to sell on behalf of Seal Lumber Company, Inc. A more classic case of apparent authority could not exist.
It is true that the Agreement to Purchase executed by the Sciannas which constituted an acceptance of the offer contained in Stipulated Exhibit # 2, incorrectly described the tract in question as "belonging to Clyde & Edward Seal". However, the parties have stipulated that all the instruments in question describe the same property, and thus, any flaw in the description is of no moment. Furthermore, the incorrect description appears to have been entered in the handwriting of Mary W. Crain, agent of Spiers Realty, and not to be the result of any action on the part of the Sciannas or Edward or Clyde Seal.
The signatures of Edward Seal and Clyde Seal appear opposite the date 3/27/79 in the Agreement to Purchase. A contract to sell had already been confected by that time by virtue of the offer contained in Stipulated Exhibits # 's 2 and 3 and the acceptance that took place when the Sciannas signed the Agreement to Purchase on 3/23/79. Thus, the only possible legal significance of the affixing of the Seals' signatures to the Agreement to Purchase is that that act constitutes further support for the contract to sell already confected. Corporate shareholders of a corporation having but two shareholders may informally but in writing authorize (ratify) the execution of an option agreement after it is in fact executed by one of the two shareholders. Greenleaf Plantation, Inc. v. Kieffer, 403 So.2d 100 (La.App. 3d Cir.1981), writ refused 409 So.2d 675 (1981). Similarly, obviously the execution of a contract to sell may be informally authorized (ratified) in a writing subsequent to the execution of the contract to sell. Thus, the contract to sell acquired an additional support to its formation.
The Agreement to Purchase contains terms not in the Seal Lumber Company letter (stipulated Exhibit # 2), but these terms are either statements of existing law, inapplicable to the proposed transaction, or more favorable to Seal Lumber Company, Inc., than the terms of Stipulated Exhibit # 2. Thus, the differences are either legally irrelevant or fall under the general rule of LSA-C.C. art. 1807 finding a contract to be formed when the buyer offers to buy at a price more favorable to the seller than that contained in the offer to sell.
We, therefore, find that a binding contract to sell was perfected, and herein direct specific performance of the same.
On trial of the merits, counsel for the Sciannas stated he sought damages only *636 in the alternative. The pleadings pray for damages in addition to specific performance. Even if the demand for damages is not considered to be in the alternative, we find damages are not sufficiently proven. The Sciannas desired the property to build an ice plant. Expert witnesses testified to the increased cost of constructing an ice plant on the property because of the delay in transferring title. The testimony of the experts, however, was based solely upon plans prepared long after the mailing of the letter from Mr. Gallaspy calling for Seal Lumber Company, Inc. to transfer title. Thus the plans appear to have been an afterthought, and the cost of the ice plant at the time when the transfer of title was demanded by Mr. Gallaspy is too much a matter of conjecture to be a basis for the award of damages.
No mention is made of attorney's fees in brief before the court. Neither the contract to purchase nor any statute requires attorney's fees in the present situation. Attorney's fees are therefore denied. See Roberie v. Sinclair Refining Company, 252 So.2d 488 (La.App. 3d Cir.1971); Walters Air Condition Co. v. Firemen's Fund Ins. Co., 252 So.2d 919 (La.App. 2d Cir. 1971).
We find that Spiers Realty Company is entitled to the commission of $3,000.00 as awarded by the trial court. Because we order specific performance of the contract to sell, a commission is in order. The Agreement to Purchase calls for a commission of 5% of $60,000.00 or $3,000.00. The listing agreement calls for a commission of 10%. Spiers Realty prayed for a commission of 5%, which was awarded by the trial court. Spiers Realty has not answered the appeal. We affirm the action of the trial court in awarding a commission of $3,000.00.
Accordingly, judgment is rendered requiring specific performance. Because an exact property description is not in evidence, we remand the matter to the trial court to formulate a decree embodying the correct property description and ordering the transfer of title to the property in question from Seal Lumber Company, Inc. to Patrinia M. Scianna and John S. Scianna for a price of $60,000.00.
In all other respects the judgment of the trial court is affirmed. All costs shall be paid by Seal Lumber Company, Inc. in No. 82 CA 0147 and by Edward Seal and Clyde Seal in No. 82 CA 0146.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.