521 So.2d 717 (1988)
Ignatius TEDESCO, III, et ux, Plaintiffs-Appellees,
v.
GENTRY DEVELOPMENT, INC., et al., Defendants-Appellants.
No. 19070-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Writ Granted April 28, 1988.
*718 Campbell, Campbell & Johnson by James M. Johnson, John T. Campbell, Minden, for defendants-appellants Gentry Development, Inc.
Wiener, Weiss, Madison & Howell by John M. Madison, Jr., Shreveport, for plaintiffs-appellees.
Before HALL, C.J., and FRED W. JONES, JR., SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs, Dr. Ignatius Tedesco, III, and Linda Tedesco, filed suit against Gentry Development, Inc. ("Gentry"), and its president, James N. Winford, seeking specific performance of a contract to sell a parcel of land in Bossier Parish, or, in the alternative, damages, as well as attorney's fees and costs. The trial court ordered specific performance of the contract and the transfer of title to the plaintiffs. It also awarded $2,500 in attorney's fees, and an expert's fee of $150 for an appraiser who testified on behalf of the plaintiffs. Gentry suspensively appealed the trial court judgment.
In its assignments of error, Gentry claims that: (1) the trial court erred in granting specific performance under the doctrine of apparent authority of an agent; *719 and (2) the trial court erred in refusing to void the sales agreement signed by its president James N. Winford, because of lesion beyond moiety.
The plaintiffs answered the appeal, raising several issues. Plaintiffs assert their alternative demand that if the judgment ordering specific performance is not affirmed, they are entitled to damages against Mr. Winford. This contention will be considered hereafter.
Our review of the record reveals that the trial court erred in granting judgment for the plaintiffs and ordering specific performance. Therefore, we reverse the trial court judgment.

FACTS
Gentry was incorporated in 1979. The members of its Board of Directors were also directors of the First Security Bank & Trust Company. Soon after its inception, Gentry purchased a tract of land in Bossier Parish from former Louisiana Governor Jimmy Davis. The tract contained several acres and was located at the intersection of U.S. Highway 71 and Louisiana Highway 511, near the Jimmy Davis Bridge. The tract was purchased in order to provide a location for a branch bank of First Security Bank & Trust Co., and to otherwise develop the property. Subsequent to Gentry's purchase of this tract, Mr. James N. Winford became Gentry's president. He had general administrative authority to act on behalf of the corporation.
Gentry is basically a holding company. Harmon Drew, Jr., a former president of the company, testified that Gentry was formed with a two-fold purpose in mind: to buy land to hold primarily for and later sell to the bank, and to have a corporate entity readily available by which bank stock could be purchased. Gentry is apparently not a company requiring day-to-day operations. The members of its board are businessmen who primarily devote their time to other business enterprises.
Gentry subdivided the tract and designated it as the Gentry Subdivision, pursuant to a subdivision plat recorded on November 4, 1981. The plat was signed by Mr. Winford as "owner." (This plat was corrected on August 30, 1984, to show the "owner" of the land to be Gentry Development, Inc. Mr. Winford signed the ratification of this plat on behalf of Gentry in his capacity as president.) At issue in this suit is lot 2 of the Gentry Subdivision. This lot fronts on U.S. Highway 71 near its intersection with Louisiana Highway 511.
In December, 1980, Montgomery Realty & Development Company ("Montgomery Realty") appraised the lots in the subdivision. Thereafter, on April 7, 1983, at the direction of Gentry's Board of Directors, Mr. Winford signed real estate listing agreements with Montgomery Realty based upon these appraisals. Mr. Winford signed separate listing agreements for lots 2, 4, and 5, as well as a joint listing for lots 7, 8, and 9. The listing on lot 2 provided that the sales price would be $50,700, its appraised value. These listing agreements were for a term of six months. Without any written authority from Gentry, Mr. Winford renewed these listing agreements for additional six month periods on November 18, 1983 and June 18, 1984.
In June of 1984, Montgomery Realty informed Winford that a buyer had been found for lots 4 and 5 of the subdivision. On June 18, 1984, Mr. Winford signed a sales agreement on behalf of Gentry for the sale of these lots.
Shortly thereafter, on July 23, 1984, the Tedescos contacted Montgomery Realty and offered to purchase lot 2 for the sum of $45,000. The next day Dean Murphy, an employee of Montgomery Realty, telephoned Mr. Winford and advised him of the offer. While Mr. Winford declined the offer, he made a counteroffer to sell the property for the price of $50,700, based upon the appraisal which had been made three and one-half years before. Mr. Winford even authorized Mr. Murphy to sign an agreement for the sale in that amount. Another employee of Montgomery Realty, Frank Crippen, listened in on another telephone extension, and signed the agreement as a witness.
*720 On August 25, 1984, the Tedescos signed a sales agreement for $50,700. On August 30, Mr. Winford signed that agreement. However, he made some adjustments to the agreement, scratching through certain provisions. These changes were later approved by the Tedescos. The contract called for the actual sale to take place on September 26, 1984. Also on August 30, pursuant to a written resolution and authorization by Gentry's Board of Directors, Mr. Winford executed the deeds to lots 4 and 5 on Gentry's behalf.
On August 21, 1984, the Gentry Board of Directors held a meeting. According to witnesses testifying on behalf of Gentry, the directors authorized the sale of lots 4 and 5, but they did so reluctantly because of the low price. They further directed that no other lots be sold. (The trial court found that the minutes of this meeting did not accurately reflect what actually happened.) Three of the directors, Foster Campbell, Harold Holley, and Hal Montgomery, claimed that on that same day they met with Mark Montgomery to tell him that they did not want to sell any more lots. However, Mark Montomery's account of the meeting differed from that of the directors. While he could not specify the exact date, he was able to say that it was after the contract had been signed by Mr. Winford on August 30. Mr. Montgomery testified that the three directors asked him if there was any way out of the contract. After examining the file on the transaction, he informed them that there was not. The trial court accepted Mr. Montgomery's version of the meeting.
On September 17, 1984, Mr. Murphy received a call from Mr. Winford who said that Gentry wanted to remove lots 7, 8 and 9 from the market and did not want to sell lot 2. On September 20, Mr. William C. Peatross of Caddo Abstract & Title Company, Inc., wrote Gentry to inform it that the closing of the Tedesco purchase of lot 2 was scheduled for September 26. In response, Mr. John T. Campbell, counsel for Gentry, wrote to Mr. Peatross stating that Gentry did not desire to proceed with the sale of the property to the Tedescos at that time. He stated that Gentry's board of directors had previously authorized Mr. Winford to enter into a contract with Montgomery Realty to offer the property for sale for one year, but this listing had expired prior to the Tedesco offer. He stated that the board had not authorized Mr. Winford to extend the listing agreement.
Although the Tedescos were present at Mr. Peatross' office for the scheduled closing on September 26, 1984, no representative of Gentry appeared. This suit for specific performance, or, in the alternative, for damages, followed.

APPARENT AUTHORITY
The trial court found that Mr. Winford was Gentry's agent and that he acted with apparent authority when he signed the sales agreement on lot 2 on August 30, 1984. After a review of the record, we must disagree with the trial court's application of the doctrine of apparent authority to this contract for the sale of real estate.
Apparent authority is a principle of estoppel, which operates in favor of third persons seeking to bind a principal for an unauthorized act of an agent. A finding of apparent authority requires the dual showing of: (1) manifestation by the principal such that a third person is justified in believing that the alleged agent has certain authority; and (2) reasonable reliance of a third person as a result of these manifestations. Comfort Heating & Air Condition v. Brock, 476 So.2d 927 (La.App. 2d Cir. 1985); National Bank of Bossier City v. Nations, 465 So.2d 929 (La.App. 2d Cir. 1985).
In his extensive opinion, the trial judge found that the Tedescos were the third parties and that they relied upon Mr. Winford's apparent authority to act for Gentry. The trial judge ennumerated eight manifestations of Mr. Winford's authority. However, the opinion makes no reference to LSA-C.C. Art. 2996 or 2997. Nor is there any reference to the requirement that an agent's authority to deal with immovable property must be in writing. Instead, the court simply stated that the lack of a formal written corporate resolution granting *721 Mr. Winford authority to sign the listing agreement of June 18, or the August 30 sales agreement, precluded a finding of actual authority.
The crucial question in this case is whether the doctrine of apparent authority, relied upon by the plaintiffs and made the basis of the trial court's decision, is applicable to this purported sale of immovable property. LSA-C.C. Arts. 2996 and 2997 bear upon this issue. Those articles provide, in pertinent part:
Art. 2996. Powers conferred by mandate
Art. 2996. A mandate conceived in general terms, confers only a power of administration.
If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express.
Art. 2997. Cases where express power required.
Thus the power must be express for the following purposes:
To sell or buy.
To incumber or hypothecate.... and in general where things to be done are not merely acts of administration, or such as facilitate such acts....
Particularly relevant to a discussion of these articles and the issue of whether the doctrine of apparent authority is applicable to the sale of real estate is the decision of this court in National Bank of Bossier City v. Nations, supra. There, the president, who was the majority shareholder of a corporation, mortgaged a tract of land owned by the corporation to secure his personal debt. He presented to the bank a forged corporate resolution purporting to authorize the encumbrance of the property. The bank filed suit to foreclose, alleging that the corporate president was clothed with apparent authority to act on behalf of the corporation. This court rejected that argument.
The facts of Nations, supra, are clearly distinguishable from the facts of the instant case. Here there are no allegations of fraud or forgery, as was the situation discussed in Nations, supra. However, in Nations, this court clearly stated that the doctrine of apparent authority was not applicable to the mortgage or sale of corporate property where Article 2997 applied. That article applied equally to mandates to sell and to mortgage.
Among the cases quoted by the court was Marsh Inv. Corp. v. Langford, 490 F.Supp. 1320 (E.D.La.1980), affirmed, 652 F.2d 583 (5th Cir.1981), cert. denied 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), which involved a corporation controlled by Carlos Marcello. In Marsh, Inv. Corp. v. Langford, the court stated:
Even more, it is not even clear that the doctrine of apparent or inherent authority can apply in this case. The Louisiana civil code provides that the power must be express and special for an agent "[t]o incumber or hypothecate." [LSA-C.C. art. 2997.] So it seems that not even Carlos Marcello himself, or any officer of Marsh for that matter, could have validly executed these mortgages, because even though the corporation usually followed Marcello's recommendations, he was not expressly authorized by resolution to take such action in the name of the corporation. 490 F.Supp at 1327.
In Nations, supra, this court went on to discuss the jurisprudence that has arisen in Louisiana concerning apparent authority, including the two cases which concern us most in the present instance.
We are not unmindful of the numerous cases that find apparent authority, starting with Case v. Citizens Bank of La., 10 Otto 446, 100 U.S. 446, 25 L.Ed 695 (1880), and creating an imposing line of jurisprudence. The vast majority of those cases, however, involve contracts for personal services and for movable goods and are therefore exempt from the restrictions of the code articles cited above. Two cases are worthy of special note, however, because they appear to extend the notion of apparent authority to real estate transactions.
In Ideal Sav. & Homestead Ass'n v. Kerner, 208 La. 513, 23 So.2d 200 (1945), the plaintiff homestead had been attempting for some time to sell off a piece of property. Its real estate agent finally *722 found a purchaser, the defendant, who executed an act of sale at the homestead's office on the strength of a notarized resolution and the signatures of the homestead's president and real estate agent. The sale was witnessed by other homestead personnel. The problem arose when the president failed to turn over the sale proceeds to the homestead; he arranged a scheme whereby he continued to pay monthly rent on the house, as if it had never been sold. Some time later, the homestead sought to annul the sale; the trial court complied but the supreme court reversed. Its opinion is a lavish exposition of apparent authority doctrine and jurisprudence, omitting any mention of articles 2996 and 2997. On closer examination, however, certain undeveloped facts support the result, if not the stated rationale, in Kerner. The homestead's directors had hired the real estate agent and apparently followed his progress for over a year. Furthermore, the court said, "The plaintiff's own evidence makes it doubtful whether the Board of Directors did not pass a resolution authorizing the president to sign..." 23 So.2d at 201. These remarks suggest that there really was full consent and a written mandate. There was full knowledge in that the homestead attorney who examined the title and prepared the sales documents was a member of the board of directors. The court also mentioned that the homestead failed to attack the fraudulent sale for over a year, in spite of regular internal and State audits which should have revealed the scheme, thus indicating a sort of ratification. Finally, there was an otherwise very strong case of apparent authority.
In Spiers v. Seal, 426 So.2d 631 (La. App. 1st Cir.1983), writ denied 433 So.2d 150 (La.1983), the defendants were Clyde and Edward Seal, sole shareholders, directors and officers of Seal Lumber Co. Inc. Working through a real estate agent, they allegedly entered an agreement to sell twenty-six acres of land near Bogalusa. They failed to show up at the closing because they "just decided it was kind of a bad deal." 426 So.2d at 633. In a suit for specific performance, they contended their offer was not supported by any resolution of the Board of Directors, written or verbal. The court enforced the contract on a theory of apparent authority. We think this result was fair because neither Clyde nor Edward denied their corporate intent to sell. Intent was expressed by a listing agreement, signed by Clyde, and a sales offer, signed by Edward as president; thus there was written consent from all shareholders, directors and officers, in compliance with article 2997. Furthermore, there was a subsequent "Agreement to Purchase" signed by both Clyde and Edward. This operates as a ratification. Finally, there was the guileless attempt to recede, which was patently arbitrary. Under these circumstances, we think the result was correct. We cannot subscribe, however, to our brethren's broad language under headnotes 5 and 6, to the effect that apparent authority is an "obvious" exception to article 2997. Such a reading would emasculate that article. (Emphasis supplied.)
The same question concerning the application of Article 2997 and the need for express and written authority of an agent to act in real estate transactions was also encountered by the Third Circuit Court of Appeal in Greenleaf Plantation, Inc. v. Kieffer, 403 So.2d 100 (La.App. 3rd Cir. 1981), writ denied 409 So.2d 675 (La.1981). There, a divided five-judge panel faced a situation in which the facts were reversed from those before us. The corporation sought specific performance of an option to purchase immovable property where neither of its two corporate officers (who were the sole shareholders), or its attorney, had written authority to buy immovable properties on behalf of the corporation. The trial court ruled in favor of the defendant-landowners, finding that there was no meeting of the minds between the parties, and that the corporation president did not have the necessary written authority to purchase immovable property. On appeal, the majority of the appellate panel reversed the trial court decision. It applied "the doctrines of *723 estoppel, informal ratification, and apparent authority" to find that the corporation was bound by its president's exercise of the option. Specifically, the court found that a letter by the corporate attorney to the defendants was a timely notice of intent to exercise the option.
In a thoughtful and legally sound dissent, Judge Domengeaux criticized the majority for ignoring "the firmly entrenched legal principles which require contracts affecting immovable property to be in writing.... Most importantly, however, Louisiana courts have required that a mandate or power of attorney to sell or purchase land for another must also be in writing." In support of the latter statement, Judge Domengeaux cited several cases, most notably, Rebman v. Reed, 335 So.2d 37 (La. App. 4th Cir.1976), writ denied 338 So.2d 699 (La.1976) and Tchoupitoulas, Inc. v. McCullough, 349 So.2d 346 (La.App. 4th Cir.1977), writ denied 351 So.2d 166 (La. 1977). In addition, see the recent cases of East Bank Realty, Inc. v. Robert, 411 So. 2d 500 (La.App. 1st Cir.1982), and Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir.1983), writs denied 438 So.2d 572, 576 (La.1983).
Judge Domengeaux went on to distinguish the cases relied upon by the majority for the principle that a corporate officer's act on his corporation's behalf, which was not supported by a board of director's resolution, may, nontheless, be upheld. Three of the cases did not deal with the transfer of immovable property. Another involved the actions of a corporate officer which were clearly ratified by the corporation within days of their occurrance. The remaining case was Ideal Sav. & Homestead Ass'n v. Kerner, which this court discussed in Nations, supra.
In the instant case, for Mr. Winford, as president of Gentry, to be empowered to sell the corporation's immovable property, an express grant of power was required under Article 2997, and that mandate must be in writing. The power to sell real property is not a mere act of administration. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (La. 1957). No evidence was presented that Mr. Windord was authorized by a written mandate to sell immovable property belonging to Gentry. Mr. Winford had no authority to bind Gentry to the sale of its real estate.
Nor was there any evidence of ratification by the corporation. The lack of an express written power of attorney renders a transaction involving immovable property voidable as between the parties if no express authority was actually given. However, the principal may ratify. Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246 (1965); Sanders v. Rudd, 427 So.2d 1271 (La.App. 2d Cir.1983). To find ratification of an unauthorized act, the court must find that the facts indicate a clear and absolute intent to ratify the act. No intent will be inferred when the alleged ratification can be otherwise explained. Bamber Contractors v. Morrison Engineering, 385 So.2d 327 (La.App. 1st Cir. 1980); First National Bank of Shreveport v. Crawford, 455 So.2d 1209 (La.App. 2d Cir.1984), writ denied 459 So.2d 538 (La. 1984).
Three of the directors of Gentry met with Mr. Montgomery shortly after their August 21 meeting to apprise him of the Board of Director's displeasure over the sale of lots in the subdivision. Whether this meeting occurred on August 21 or after August 30 is irrelevant. In either case, we believe that the Board of Directors acted within a reasonable period of time to repudiate any of Mr. Winford's unauthorized acts which affected this property. Under the circumstances, there was not a long delay in repudiating the sales agreement, and Gentry did not do anything to indicate approval of the unauthorized act. Further, there is nothing to indicate that a quick repudiation was required. McCarty v. Panzico, 467 So.2d 1229 (La. App. 2d Cir.1985). Gentry certainly moved quickly to inform Mr. Montgomery that there was a serious problem with the transaction.
Not only must the mandate be in writing, there is also support in the jurisprudence for the proposition that a ratification of a sales agreement on immovable property executed *724 by an agent must likewise be in writing. Krupp v. Nelson, 50 So.2d 464 (La.App. 4th Cir.1951); Daigle & Assoc., Inc. v. Coleman, 385 So.2d 349 (La.App. 1st Cir.1980), affirmed on other grounds, 396 So.2d 1270 (La.1981); Fejta v. GAF Companies, Inc., 800 F.2d 1395 (5th Cir. 1986).
In the absence of an express and written mandate to sell immovable property on behalf of the corporation, or a ratification by the corporation, Gentry could not be bound by the contract which Winford entered into with the plaintiffs. Examination of the applicable civil code articles and the jurisprudence leads us to conclude that the doctrine of apparent authority is inappropriate in the realm of sales and mortgages of real estate.
Having found apparent authority inapplicable to the present facts, we now consider the plaintiff's argument that Mr. Winford had implied authority to sell lot 2. As there was no express and written mandate, he unquestionably lacked actual authority, unless it could be said that he had implied authority.
Implied authority is actual authority, which, while not expressed in the agency agreement, is inferred from circumstances, purposes, and nature of the agency itself. An agent is vested with the implied authority to do all of those things necessary or incidental to the agency's assignment.
Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). We are of the opinion that implied authority is equally inapplicable under the circumstances, as Mr. Winford had only the actual authority to enter into the original listing agreement.[1] The ability to do the lesser thing, to initially list the property, does not infer the ability to do the greater, namely, selling the property after his original authority had lapsed. The Gentry Board of Directors took no action which would have impliedly authorized Mr. Winford to actually sell the corporation's immovable property.
Even if the doctrine of apparent authority was applicable in this case involving the sale of immovable property without the express authority required by LSA-C.C. Arts. 2996 and 2997, the doctrine could not be properly applied in this case. Mr. Winford's actions with respect to other property owned by Gentry could not be relied upon by Montgomery Realty, or the Tedescos, as a grant of authority by Gentry to Winford to sell another specific tract of land for a specific price.
Additionally, a third party seeking benefits from the apparent authority doctrine may not blindly rely on the assertions of an agent. One dealing with an agent, by the mere fact of agency, is given the right and duty to determine, at his peril, whether the authority purportedly granted by the principal will permit the proposed act by the agent. Bamber Contractors, Inc. v. Morrison Engineering & Contracting Company, Inc., 385 So.2d 327 (La.App. 1st Cir.1980).
However, because we do not find the doctrine of apparent authority applicable in this case, we need not further address this issue.

LIABILITY OF MR. WINFORD FOR DAMAGES
As Gentry is not bound under the sales agreement, we now turn to the plaintiff's alternative demand for damages from Mr. Winford.
The following Civil Code articles apply to the liability of an agent:
Art. 3010. Liability for acts beyond authority; ratification
The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity. *725 Art. 3012 Acts beyond power with third person informed of authority
The mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee.
Art. 3013. Mandatary's liability to third persons
The mandatary is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers.
The last phrase of Article 3013 is more accurately translated from the French text as "or when he has exceeded the bounds of the mandate, without having given them knowledge of his powers." A. Lorenze Company v. Wilbert, 165 La. 247, 115 So. 475 (1928). One who contracts as the agent for another is not bound personally if it develops that he exceeded his authority, or acted without legal authority, unless the other party to the contract is misled or deceived. Wilbert, supra.
Generally, an agent is not responsible to third persons where his principal is disclosed. However, an agent may become personally liable if he expressly or impliedly pledges his own responsibility. One way in which an agent may pledge his own responsibility is by going beyond the limits of his procuration. Dupre v. Marquis, 467 So.2d 65 (La.App. 3rd Cir.1985), writ denied 472 So.2d 38 (La.1985).
As president of Gentry, Mr. Winford exercised some power as an agent in administrative matters. However, in order to alienate the corporation's property, an express and written mandate was required. Lacking such a mandate, his execution of the August 30 sales agreement went beyond the limits of his powers as an agent.
As we have stated heretofore, the jurisprudence of this state requires that a power of attorney authorizing the sale of real estate must be express and in writing. Here, there was no written power of attorney, and neither the Tedescos nor Montgomery Realty required that such a document be furnished. Since the jurisprudence requires a writing, it is difficult for us to find that the Tedescos or Montgomery Realty justifiably relied upon an unwritten representation by Mr. Winford that he had authority to bind his principal to the alienation of the tract in question.
Mr. Winford did not expressly pledge his own responsibility by signing the sales agreement. Nor do we believe he did so implicitly. The plaintiffs cannot be said to have been deceived or misled by Mr. Winford in the present circumstances. Dean Murphy and Frank Crippen, Jr., employees of Montgomery Realty, knew that Mr. Winford was acting as president of Gentry and that, as such, he required authorization from the Board to accept offers on its immovable property. Both "assumed" that Mr. Winford had relayed the offers to the Board for approval before accepting them on Gentry's behalf. They made no attempt to determine Mr. Winford's authorization at the time he entered into the sales agreement on lot 2.
Therefore, we find that Mr. Winford is not personally bound and liable for damages under these circumstances. Consequently, we need not consider the plaintiffs' arguments as to assessment of damages and attorney's fees.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is reversed, and the judgment ordering the transfer of lot 2, Gentry Subdivision, from Gentry Development, Inc., to the plaintiffs is set aside. All other demands asserted by plaintiffs are denied. All costs are assessed to plaintiffs.
REVERSED.
HALL, C.J., concurs and assigns written reasons.
SEXTON, J., dissents and assigns written reasons.
HALL, Chief Judge, concurring.
While I do not necessarily agree that the doctrine of apparent authority, a form of *726 estoppel, can never apply to a corporate transaction involving immovable property, I agree that the doctrine should not be applied in this case so as to bind the defendant corporation for the unauthorized act of its president in signing the contract to sell immovable property owned by the corporation. The corporation made no manifestations of the president's authority to the plaintiffs directly. The sales manager of the real estate brokerage company who handled the transaction testified he was aware that Winford needed to obtain authority from the board of directors to make the sale as he did in the one previous transaction, and that he "assumed" Winford obtained the necessary authority because he signed the contract. As found by the trial court, Winford did not have actual authority to sell this property. Neither plaintiffs nor their realtor-agent were justified by any manifestations of other corporate officials in believing or assuming that Winford had such authority.
SEXTON, Judge, dissenting.
I respectfully dissent, agreeing that "[t]he apparent authority doctrine is obviously an exception to the general rule requiring that there must be an express written resolution of the board of directors authorizing the corporate officer to execute an instrument buying or selling immovables." Spiers v. Seal, 426 So.2d 631, 635 (La.App. 1st Cir.1982), writs denied, 432 So.2d 269 (La.1983), 432 So.2d 270 (La. 1983), 433 So.2d 150 (La.1983).
The trial court specifically found that this corporate president, Mr. Winford, had been clothed with apparent authority. As the majority points out, there is more than an ample basis for that holding. In similar circumstances, our Supreme Court invoked the doctrine of apparent authority and held in the following terms that a resolution by a corporate board of directors was unnecessary to perfect a sale of corporate lands.
[T]he power of a corporate officer ... to contract for the sale of corporate lands need not necessarily be conferred by a formal resolution of the board of directors but may, as in the case of other power, be inferred from the conduct of the corporation in the transaction of its business....
Ideal Savings & Homestead Association v. Kerner, 208 La. 513, 519, 23 So.2d 200, 202 (1945).
We are bound by this pronouncement. Therefore, I respectfully suggest that the reliance by the majority on dicta in National Bank of Bossier City v. Nations, 465 So.2d 929 (La.App. 2d Cir.1985), which attempted to distinguish Ideal Savings and Spiers v. Seal, is misplaced.
The judgment of the trial court should be affirmed.
NOTES
[1] Although Attorney John T. Campbell's letter indicates that the listing was for one year, this was error. The original, authorized listing was for a six month period. There were two subsequent six month listings signed by Mr. Winford, neither of which were authorized by resolution of the Board of Directors.